UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

SOUTHERN FILTER MEDIA, LLC

CIVIL ACTION

VERSUS

NO. 13-116-JJB

TIMOTHY P. HALTER

**RULING DENYING DEFENDANT'S MOTION TO DISMISS**

This matter is before the Court is a motion to dismiss by Defendant Timothy P. Halter ("Halter"). (Doc. 8). Plaintiff Southern Filter Media, LLC ("SFM") has filed an opposition. (Doc. 13), to which Halter has filed a reply. (Doc. 19). Oral argument is not necessary. For the reasons herein, the Court DENIES the motion to dismiss. (Doc. 8).

The following facts are from the Complaint (Doc. 1) and are accepted as true for the purposes of this motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In 2011, Titan Sand USA, L.L.C. ("Titan") approached SFM to enter into contract negotiations in which SFM would supply sand to Titan to be used in their oil and gas dealings. SFM hesitated to enter into a large contract with Titan based upon financial concerns as Titan was a new, start-up company. Halter and two other representatives from Titan visited SFM's plant in Louisiana and engaged in contract discussions with SFM. Halter, a financial investor in Titan, assured Matthew Bryant of SFM that both he and his financial group, Halter Financial Group ("Halter FG"), had sufficient capital to guarantee the contract in the event that Titan was unable to perform. Warren, an associate of Halter and a Titan employee, stated that Halter FG and more specifically Halter himself had the wealth to easily pay the entirety of the contract if need be. Halter represented to SFM that he was the "money guy" and that his company Halter FG was a world leader in the reverse

1

mortgage industry. SFM also confirmed this on Halter FG's website. Titan's listed address with the Texas Secretary of State is Halter's home address. SFM reasonably relied on these representations made to him by Titan, Halter, and the rest.

On September 29, 2011, SFM and Titan entered into a Master Supply Agreement ("MSA") and Halter signed a Performance Guaranty. Pursuant to the MSA, which became effective on February 1, 2012, SFM agreed to sell and Titan agreed to purchase at least 6,000 tons of sand products per month for eighteen months. One month after the contract became effective, Titan defaulted after making one partial payment. On May 14, 2012, SFM demanded payment from Halter FG pursuant to the Guaranty. Halter responded, indicating that Halter FG was a subsidiary entity of the HFG GP, LLC and had limited assets.

On May 21, Titan filed for bankruptcy in the Northern District of Texas. On June 15, 2012, SFM filed suit against Halter FG in the Middle District of Louisiana to recover on the contract. However, on October 16, 2012, Halter FG and HFG GP, LLC filed for bankruptcy in the Northern District of Texas. On February 26, 2013, SFM filed this action, alleging fraud, misrepresentation, and conspiracy. SFM alleges that Halter and other Titan executives knowingly defrauded SFM by "having Halter FG, a financial shell, sign the Performance Guaranty notwithstanding Halter's knowledge that SFM was relying upon the financial strength of the Halter Financial Group to guarantee the MSA." (Doc. 1, ¶ 28). SFM further alleges that Halter conspired with Titan through its principals and Halter FG to defraud SFM knowing that Halter FG would be unable to perform under the Guaranty. Alternatively, SFM alleges that Halter negligently misrepresented or allowed material facts to be misrepresented.

Halter has filed a motion to dismiss, arguing that (1) this Court lacks personal jurisdiction over Halter; (2) the Middle District of Louisiana is an improper venue; and (3) SFM has failed to

state a claim upon which relief can be granted. Halter argues that this Court lacks personal jurisdiction because Halter's contacts with the state does not give rise to either general or specific jurisdiction. Halter further argues that the venue is improper because he is not domiciled in the district as required under 28 U.S.C. §1391(b)(1), nor has a substantial part of the events giving rise to this action occurred in the Middle District of Louisiana as required under 28 U.S.C. §1391(b)(2). Finally, Halter moves to dismiss this motion for failure to state a claim upon which relief can be granted.

Personal Jurisdiction

When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). In deciding upon a motion to dismiss for lack of personal jurisdiction, courts within the Fifth Circuit accept the plaintiff's allegations as true, other than those which are controverted by the defendant or are simply conclusory statements, and conflicts between the parties' facts are resolved in the plaintiff's favor. *Panda Brandywine v. Potomac*, 253 F.3d 865, 868 (5th Cir. 2001).

In a diversity action, a federal court may exercise personal jurisdiction over a defendant to the extent permitted by the applicable state law. Fed. R. Civ. P. 4(e)(1); *Panda Brandywine*, 253 F.3d at 868. Louisiana's long-arm statute authorizes the exercise of personal jurisdiction to the extent allowed by the Due Process Clause of the Fourteenth Amendment. *Panda Brandywine*, 253 F.3d at 868. A court's exercise of personal jurisdiction over a nonresident defendant comports with the due process clause when (1) the defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with that state and (2) the court's exercise of jurisdiction over that defendant does not offend

3

traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

The "minimum contacts" inquiry is fact intensive and no one element is decisive; rather, the touchstone is whether the defendant purposely directed his activities towards the forum state, such that he could reasonably foresee being haled into court there. *Luv N' Care Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 470 (5th Cir. 2006) (*quoting World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). A party may establish minimum contacts sufficient for the state to assert specific jurisdiction or general jurisdiction. *Alpine View Co. v. Atlas Copco*, A.B., 205 F.3d 208, 215 (5th Cir. 2000).

Halter asserts that neither general nor specific jurisdiction exists but even if this Court determines that such jurisdiction exists, exercising jurisdiction over Halter would offend the notions of "fair play and substantial justice." Because SFM does not argue that there is general jurisdiction, the Court's analysis will focus on whether there is specific jurisdiction only.

To establish specific jurisdiction, the defendant must have "purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). That is, for a court to exercise specific jurisdiction (1) the defendant must have directed activities or purposely availed itself of the privileges of conducting activities in the forum state; (2) the cause of action must arise out of the defendant's forum-related contacts; and (3) the court's exercise of jurisdiction must be fair and reasonable. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006). Merely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction. *Burger King*, 471 U.S. at 472. Creating "continuing obligations" is considered purposely availing one's self. Id. at 476. "Even where a

defendant has no physical presence in the forum state, a single purposeful contract is sufficient to confer personal jurisdiction if the cause of action arises from the contract." *McGee v. International Life Ins. Co.*, 355 U.S. 220, 222-23 (1957).

Here, the Court finds that Halter FG did purposely direct its activities towards this forum state in such a way that it could have reasonably foreseen being haled into court here to enforce the contract that it made. As the Fifth Circuit explained, "mere foreseeability or awareness [is] a constitutionally sufficient basis for personal jurisdiction if the defendant's product made its way into the forum state while still in the stream of commerce." *Luv N' care, Ltd.*, 438 F.3d at 470 (quotations and citations omitted). While Halter FG did not put a tangible product into the stream of commerce, Halter FG put an intangible product, a guaranty, into the stream of commerce, which is sufficient for the minimum contacts analysis. *See Central Progressive Bank v. Kuntz*, 2008 WL 5264260 (E.D. La. 2008) (finding that minimum contacts existed when a non-resident solicited loans and signed multiple documents that were the subject of the litigation); *See also Consolidated Companies, Inc. v. Kern*, 99-2704, 2000 WL 1036186 (E.D. La 2000) (finding that minimum contacts with Louisiana existed when a non-resident executed a Guaranty in order to induce a company to provide credit).

Additionally, Halter FG created a relationship with SFM in order to foster a business relationship between Titan and SFM. Halter FG induced SFM to contract with Titan, which bound Halter FG and Titan for the financial obligations of this continuing obligation. Therefore, (1) Halter FG directed activities and purposely availed itself in Louisiana; (2) this claim arose out of this contact. Having established these minimum contacts, the burden then shifts to the defendant to defeat jurisdiction by showing that exercising personal jurisdiction over it would be unfair or unreasonable. *Nuovo Pigone, SPA v. Storman ASIA M/V*, 310 F.3d 374 (5th Cir.2002).

A party should have reasonably anticipated that its failure to meet its contractual obligation might be subject to suit in the forum state. *Id*. at 379. In the same regard, Halter FG should have reasonably anticipated a failure to uphold the Guaranty it signed would result in a suit in Louisiana.

After determining whether a party has sufficient minimum contacts and that specific jurisdiction does exist, the court must next determine whether the exercise of jurisdiction would "offend traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316. In doing so, the court considers (1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interest of other states in securing the most efficient resolution to the controversy; and (5) the shared interest of the several states in furthering fundamental social policies. *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987).

Here, the issue is whether the Court's exercise of jurisdiction over him does not offend the traditional notions of fair play and substantial justice. *See Int'l Shoe Co.*, 326 U.S. at 316. The Court looks into five factors in in determining if the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice. The first factor considered is the burden on the defendant. Halter is not significantly burdened because he engaged in economic activity in Louisiana which the Supreme Court has held as sufficient to show that the defendant was not burdened. *See McGee v. International Life Ins. Co.*, 355 U.S. 220, 222-23 (1957). Louisiana certainly has an interest in trying this case as to protect business interests of its citizens. SFM has an interest in obtaining relief from a deal enacted in bad faith. This Court is the most efficient or as efficient as any other forum in resolving this controversy as the claims arose here and since Louisiana law governs the claims, and there is a shared interest amongst the

6

states as well in furthering fundamental policies of protecting business interests from fraudulent activities. Therefore, exercising personal jurisdiction over Halter does not offend traditional notions of fair play and substantial justice.

Having found that the defendant corporation, Halter FG, has established minimum contacts with SFM, the Court must next address whether the fiduciary-shield doctrine applies. Even if a defendant corporation has established minimum contacts by contracting with the plaintiff in the forum state, a court may not exercise jurisdiction over a corporate representative whose activities were directed towards the forum state solely on behalf of the corporation, and in his capacity as a corporate representative. *Miller v. Am. Gen. Fin. Corp.*, 2002 WL 2022536, at *12 (E.D. La. Sept. 4, 2002). Instead, for a court to exercise jurisdiction over a corporate representative, the individual must have personally engaged in activities within the forum state which would bring him within the state's long-arm statute, *H.R. Temps, Inc. v. Indus. Mech. Fabricators, Inc.,* 1992 WL 167034, at *3 (E.D. La. 1992), for instance, by committing a tort, such as fraud, in the forum state. *See*, e.g., La. Rev. Stat. Ann. § 13:3201(3) (stating that a Louisiana court may exercise personal jurisdiction over a non-resident defendant if the defendant causes injury or damage by an offense committed in the state). In Louisiana, an individual commits fraud when the individual misrepresents or suppresses the truth with the intention of obtaining an unjust advantage or causing loss to another. La. Civ. Code. art. 1953.

With respect to this Court exercising personal jurisdiction over Halter, a corporate representative, Louisiana law allows courts to exercise jurisdiction in cases of fraud when the individual misrepresents the truth with the intention of obtaining an unjust advantage. La. Civ. Code. art. 1953. SFM sought assurances that Titan would be able to perform the contract. Halter agreed that his financial group, Halter FG, would guarantee the contract. To assuage

7

SFM's fears, Halter FG was represented as having the financial strength to be able to provide this guarantee. Halter FG's website assured that the financial group was an established, capitalized entity with the resources to cover the agreement. Halter himself represented that he was the "money guy" who owned Halter FG. Halter represented that Halter FG was a world leader in reverse mortgages further establishing its financial strength. Warren, an agent of Titan and an associate of Halter, specifically stated that Halter FG and Halter himself could easily cover the entirety of the contract. Pursuant to *Panda Brandywine*, 253 F.3d at 868, SFM's allegations are taken as true; therefore, Halter, personally and through associates, misrepresented the financial strength of Halter FG to SFM which induced SFM to contract with Titan. This induction gave Halter and Halter FG an unjust advantage in negotiating the Performance Guaranty. Based on these allegations which are taken as true, this Court has personal jurisdiction over Halter as a corporate representative.

Halter, however, argues that his actions were taken on behalf of Halter FG and therefore fall under the fiduciary-shield doctrine.[1] The doctrine allows corporations to insulate or shield individuals acting within their official capacities or investors. In ordinary circumstances, this would not allow SFM to sue Halter for things Halter FC did. There are some exceptions however. The Fifth Circuit has defined these as

> [A] corporation's existence is presumes to be separate, but can be disregarded if (1) the corporation is undercapitalized, (2) without separate books, (3) its finances are not kept separate from individual finances, individual obligation are paid by the corporation, (4) the corporation is used to promote fraud or illegality, (5) corporate formalities are not followed or (6) the corporation is merely a sham.

---

[1] This Court questions whether Halter Financial Group, LP actual falls under the fiduciary shield doctrine as they are not an LLP or an LLC. However, this would be a moot investigation as they do not qualify for the fiduciary shield doctrine for the reasons mentioned.

*Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir. 1985) (quoting *Lakota Girl Scout Council, Inc. v. Hvey Fund-Raising Management, Inc.*, 519 F.2d 634 (8th Cir. 1975). Here, the Court finds that the corporation was undercapitalized as evidenced by its filing for bankruptcy. To make the contracts and representations that they did, Halter FG was certainly undercapitalized, because Halter FG could not cover contractual obligations. Beyond that, the fiduciary-shield doctrine can be overcome by the allegations of fraud. SFM also alleged that Halter FG was a sham corporation by calling it a financial shell of HFG GP, LLC . The Fifth Circuit has held that the fiduciary shield doctrine does not prohibit a defendant from being held liable for his own tortious conduct simply because he was an officer of a corporation. General Retail Services, Inc. v. Wireless Toyz Franchise, LLC, 255 Fed.Appx. 775, 794-795 (5th Cir. 2007). For the aforementioned reasons, the Court finds that Halter is not immune to suit under the fiduciary shield doctrine.

The Court denies the motion to dismiss for lack of personal jurisdiction because Halter, through Halter FG and Performance Guaranty, purposely availed himself in this forum which created minimum contact and specific jurisdiction and also a corporate representative misled or misrepresented facts, upon which SFM reasonably relied.

<u>Venue</u>

According to Fed. R. Civ. Proc. 12(b)(3), and 28 U.S.C. §1391(a), and 28 U.S.C. §1406(a), a case may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. Halter contends that a substantial part of the events did not occur in the Middle District of Louisiana and contends that this case should be transferred to the Northern District of Texas, where venue is proper under §1391(b)(1) as he, the defendant, resides there.

Under 28 U.S.C. § 1404(a), for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. To grant a motion to transfer venue, (1) the transferee court must be a proper venue—that is, the plaintiff could have brought the action in that court as an original matter; and (2) the transfer must serve the convenience of parties and the interests of justice. *See In Re Volkswagon AG*, 371 F.3d 201, 203 (5th Cir. 2004). Under 28 U.S.C. § 1391(a)(2), venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."

Halter argues that a substantial part of the events did not take place in the Middle District of Louisiana. He contends that the only actual event that took place in Louisiana was the August 2011 meeting and negotiation. He contends that since the signing of the Performance Guaranty took place in Texas and that because he resides in Texas, the substantial part of the events occurred outside of this forum. SFM contends that the alleged damages occurred in Louisiana and that the defendant reached out to the Louisiana company, SFM. SFM argues therefore, a substantial part of the events in fact occurred in Louisiana.

The Court finds a substantial part of the events in fact occurred in this district. Titan, Halter FG, and Halter reached out into this state to contract with SFM. In a contractual dispute, it is relevant that the defendant solicited the plaintiff's business. *See Joseph v. Emmons*, 2005 WL 757358 (E.D. La 2005). Both contracts originated out of Louisiana. First, the original agreement between Titan and SFM was signed and agreed upon in this forum. The Performance Guaranty also originated in this forum even though it was eventually signed by one of the parties outside of this forum. SFM is located in this forum, and it produces and ships its product from

10

this forum. Representations about Halter and Halter FG were made in this district or directed to this district. *See e.g. Advocate Financial, L.L.C. v. Parker Interests, L.L.C.*, 2008 WL 2773650 (M.D. La 2008) (finding that substantial actions originating from forum state formed substantial part of events). The only alleged actions that occurred outside of this district is the signing of the Guaranty by one party and residence of one party. Based on the aforementioned facts, the Court finds that a substantial part of these events occurred in the Middle District of Louisiana under the facts of this case because there is a substantial connection between the events and alleged claims and this forum.

The burden is on the defendant, when it is the moving party, to make a convincing showing that a transfer will serve the convenience of parties and the interests of justice. *Southern Investors II v. Commuter Aircraft Corp.*, 520 F. Supp. 213, 218 (M.D. La. 1981). Generally speaking, a plaintiff is entitled to litigate its suit in its preferred forum, *Williams v. Green Bay & W.R. Co.*, 326 U.S. 549, 554 n.4 (1946), and therefore, a court should only transfer a suit "to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient." *Van Dusen v. Barrack*, 376 U.S. 612 (1964). However, a number of federal courts have determined that a plaintiff's forum choice is entitled less deference if the plaintiff is not a resident of the forum. 15 FEDERAL PRACTICE AND PROCEDURE § 3848, 130 (2007).

The Court will employ a number of private and public interest factors to determine if a transfer is warranted. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). The private interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses; (3) the cost of obtaining attendance of willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Id*; *see also* 15 FEDERAL PRACTICE AND PROCEDURE § 3851, 199 (2007)

(stating that the availability and convenience of witnesses is arguably the most important factor to be considered). The public interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies decided at home; (3) having the trial of a diversity case in a forum that is at home with the state law that must govern the case. *Gulf Oil Corp.*, 330 U.S. at 509.

The burden is on the defendant, the moving party, to establish that a transfer of venue is warranted. Halter alleges that Northern District of Texas is a more proper forum, yet does not establish why the transfer will serve the convenience of parties and the interests of justice. Halter contends that his resident district is the most proper forum for solely that reason. Therefore, there is little evidence that forum would be more convenient. In the public interest, Louisiana law governs the alleged claims, and the claims originated from here. Therefore, there is a public interest in hearing this claim in the Middle District of Louisiana. In private interests, SFM chose this forum, and generally speaking, the plaintiff is entitled to choose his preferred forum. Although little has been said on the matter, the plaintiff's witnesses will likely be from this district, and the defendant's witnesses will likely not be from this district. Therefore, a transfer is likely not more convenient for the witnesses. The defendant makes no allegations as to why a transfer would be more convenient. Therefore, the Court finds that a transfer to the Northern District of Texas will not serve the convenience of parties and the interests of justice.

Based on the aforementioned reasons, the Court denies the motion to dismiss for improper venue and also denies the motion to transfer because (1) a substantial part of the events occurred in this district and (2) a transfer will not serve the convenience and justice interests of the parties.

<u>Failure to State a Claim</u>

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing the complaint, the court must accept all well-pleaded facts in the complaint as true. *C.C. Port, Ltd. v. Davis-Penn Mortg. Co.*, 61 F.3d 288, 289 (5th Cir. 1995). In order to survive a motion to dismiss, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Halter contends that SFM failed to state a claim upon which relief can be granted. Halter alleges that SFM failed to plead enough facts to allege fraud because Fed. R. Civ. P. 9 imposes a heightened standard. In Louisiana, a claim of fraudulent misrepresentation "may be stated as follows: (1) a misrepresentation of a material fact, (2) made with the intent to deceive, and (3) causing justifiable reliance with resultant injury" *Silver v. Nelson*, 610 F. Supp. 505, 517 (E.D. La. 1985). Furthermore, under Federal Rules of Civil Procedure 9(b), fraud must be stated "with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

Here, SFM pleads there was a misrepresentation of material fact. Halter and his associates represented to SFM that Halter FG or Halter himself could easily cover the financial requirements of the Performance Guaranty. These representations were also made to the reputation of Halter FG through the moniker, "a world leader in the reverse mortgage industry" and Halter as the "money guy." SFM was led to believe that Halter FG was established and capitalized. A plaintiff cannot just merely assert that a statement is untrue. See *SW. La. Healthcare Sys. V. MBIA Ins. Corp.*, 2006 WL 2548183 (W.D. La. 2006). The representations made about Halter FG's financial strength and ability to cover the Guaranty are more than merely asserted as untrue, because Halter FG could not cover the contract of Titan and filed for bankruptcy protection. SFM relied on these representations as well. The agreement, to which

13

Titan defaulted, was contingent on the representations made by Halter and his associates. Without the Performance Guaranty, which is the source of the representations, SFM would not have entered the contract.

Fed. R. Civ. P. 9(b) states, "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." SFM made general accusations of such in the original complaint but the plaintiff must plead "specific facts supporting an inference of fraud." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) (quoting *Melder v. Morris*, 27 F.3d 1097, 1102 (5th Cir. 1994). "Alleged facts are sufficient to support such an inference if they either (1) show a defendant's motive to commit securities fraud or (2) identify circumstances that indicate conscious behavior on the part of the defendant." *Id*. (quoting *Herrmann Holdings Ltd. V. Lucent Techs., Inc.*, 302 F.3d 552,565 (5th Cir. 2002). Based on the entirety of the factual allegations, SFM has identified "circumstances that indicate conscious behavior on the part of the defendant." SFM has indicated that Halter knew or should have known after making representations, and he has indicated why Halter would make such representations. SFM has alleged that Halter owned the group and knew of its financial condition. SFM has indicated who made each particular statement and how that statement impacted the entirety of the circumstances. Therefore, SFM has identified circumstances that indicate conscious behavior on the part of Halter.

Therefore, the Court denies the motion to dismiss for failure to state a claim upon which relief can be granted because the complaint met the heightened standard imposed by Fed. R. Civ. P. 9(b).

Accordingly, the Court DENIES the Defendant's Motion to Dismiss. (Doc. 8).

Signed in Baton Rouge, Louisiana on July 3rd, 2013.

‎ **JAMES J. BRADY, DISTRICT JUDGE**
‎ **MIDDLE DISTRICT OF LOUISIANA**