UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| SOUTHERN FILTER MEDIA, LLC | CIVIL ACTION NO: 3:13-CV-00116- JJB-RLB |
| VERSUS | JUDGE: BRADY |
| TIMOTHY P. HALTER | MAG. JUDGE: BOURGEOIS |

**MEMORANDUM IN SUPPORT OF**
**MOTION TO COMPEL DISCOVERY RESPONSES**

For the reasons submitted herein and pursuant to Federal Rule of Civil Procedure 37(a), Plaintiff Southern Filter Media, LLC ("SFM") request that this Court enter an order requiring defendant Timothy P. Halter ("Halter") to fully respond to certain discovery propounded him it. In further support of their Motion, the SFM show as follows:

### I.   BACKGROUND

This suit arises out of the fraudulent conduct, intentional or negligent misrepresentations, and omissions of Halter surrounding the negotiation and perfection of a take or pay contract between Louisiana company SFM and Titan Sand USA, L.L.C. ("Titan") of which Halter is the chairman and manager. SFM contends that it has been significantly damaged and defrauded by a shell game constructed by Halter.

On or about August 8, 2011, Jeremy Warren, Director of Logistics of Titan, met with representatives of SFM, including Matthew D. Bryant, to discuss a potential agreement whereby SFM would supply Titan with sand for use in the oil field industry. After this initial meeting, Warren informed SFM that what he called Titan's "CFO," Halter, and its "CEO," Stephen Schubarth, would fly in to join Warren to discuss the proposal in person. On or about August 9,

2011, Halter (actually the chairman and manager of Titan), Schubarth (actually the president and COO of Titan), and Warren met at SFM's operation to further discuss the potential relationship. Warren made it clear to SFM at the initial meeting the day before that "their CFO [Halter] was flying in" to view the operation and address concerns regarding Titan's short business history. Because Titan was a risky, speculative, start-up venture, SFM expressed their concern that Titan would not be able to fulfill the terms of the contract.

At the August 9, 2011 meeting, Halter represented that he owned Halter Financial Group and that it was the "world leader in the reverse merger industry." Warren invited representatives of SFM to check its website which also repeats this claim. At the same meeting, Halter also represented and held himself out as the "money guy." Consistent with this representation, Warren later remarked that Halter Financial Group and Halter personally could "easily pay the entire MSA [take or pay contract] if necessary." Halter along with his associates led SFM to believe that the risk of contracting with a startup venture like Titan could be completely mitigated by the backing of Halter Financial Group. That is precisely the impression that Halter came down to give representatives of SFM and certainly negligently if not intentionally represented.

It was on this basis that SFM agreed to enter the take or pay contract with Titan. Everyone at the meeting from Titan—Halter, Schubarth, and Warren—left knowing that a material cause of the contract would be a performance guarantee by the "money man" and his world leading financial company. The contract was entered into on September 29, 2011 with the guaranty being the centerpiece of the agreement.

Halter's involvement and knowledge of the foregoing are confirmed by his signature on the performance guaranty of Halter Financial Group, LP, not Halter Financial Group, though the latter was clearly intended by SFM and represented by Halter.

Titan, on the back of Halter's representations and promises, had obligated itself and induced SFM to enter into an eighteen month contract take-or-pay contract with Titan. Almost immediately, Titan defaulted. On May 21, 2012, Titan filed for bankruptcy protection in the Northern District of Texas, Case No. 1242886. After Titan defaulted and was unable to perform, on May 14, 2012, SFM made demand upon Halter Financial Group pursuant to the Performance Guaranty. Halter responded that Halter Financial Group, LP was a subsidiary entity of the Halter Financial Group and had limited assets. When Halter FG did not respond, SFM filed suit to recover against Halter Financial Group, LP, i.e., *Southern Filter Media, LLC. v. Halter Financial Group, LP*, Civil Action No. 12-355, United States District Court for the Middle District of Louisiana.

As Halter and Halter Financial Group, LP asserted that Halter Financial Group, LP had no ability to pay, notwithstanding Halter's representations and Halter Financial Group's extensive holdings, SFM filed an Amended Complaint which added HFG GP, LLC, the general partner of Halter Financial Group, LP, as a defendant. On or about October 16, 2012, Halter Financial Group, LP and HFG GP, LLC both filed for bankruptcy protection in the Northern District of Texas, Case Nos. 12-36609 and 12-45783. On February 26, 2013, SFM filed this suit to have Halter answer for his part in the scheme to induce SFM to enter into the take-or-pay contract, while providing a shell company to guaranty performance of the contract, contrary to the representations he made.

On May 21, Halter filed a Motion to Dismiss for Lack of Personal Jurisdiction, Improper Venue, and Failure to State Claim w/ Declaration of Timothy P. Halter. This Honorable Court denied that motion on July 8, 2013. SFM sent discovery to Halter on September 20, 2013 and on the last day to respond, Halter objected to answering all of SFM's interrogatories as being more than allowed by FRCP 33 and provided limited responses to SFM's requests for production of documents. SFM filed for leave to serve the additional interrogatories.

On November 11, 2013, the parties held a telephone conference where they reached an agreement on the number of interrogatories and discussed issues with discovery responses. SFM verbally described the deficiencies it perceived in Halter's answers to the discovery. The parties also agreed to jointly submit a mutually agreeable protective order to the Court so that Halter could produce additional documents. On November 26, 2013, Halter provided limited answers and extensive objections to SFM's interrogatories. On January 6, 2014, Halter provided SFM with additional documents subject to the parties' protective order. The production was limited in scope.

On January 27, 2014, SFM sent Halter a 12 page deficiency letter, attached to SFM's Motion to Compel Discovery Responses as Exhibit A, requesting that Halter supplement his responses to SFM's discover by February 3, 2014. On the same day, Halter's counsel informed SFM that they were "reviewing and evaluating the purported deficiencies in Defendant's discovery responses." Counsel advised that Halter would not be able to meet the February 3, 2014 deadline to respond but did not indicate when a response would be furnished or ask for additional time. Counsel's letter is attached to the Motion to Compel Discovery Responses as

4

Exhibit B. Halter failed to respond on February 3, 2014. Given that this discovery is necessary so that SFM's expert can prepare a report, SFM filed the instant motion to compel.

## II. LAW AND ARGUMENT

The scope of discovery is broad and encompasses any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case. *Oregon Precision Indus., Inc. v. Int'l Omni-Pac Corp.*, 160 F.R.D. 592, 594 (D. Or. 1995) (citing *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S. Ct. 2380, 2389 (1978)). Specifically, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense— including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." Fed. R. Civ. P. 26(b)(1). The instant case is one of fraud or negligent misrepresentation. Given the complex maze of entities setup by Halter through which he operates Halter Financial Group, it is necessary that certain information be provided regarding that entity and its relationship with Halter Financial Group, LP—the entity which was ultimately tasked with guaranteeing the take-or-pay contract. So far, Halter has resisted SFM's efforts to get to the bottom of what entities make up the business that operates as Halter Financial Group.

Halter has thus far unilaterally limited his answers to discovery. Halter has provided bits and pieces of relevant information here and there, but the comprehensive big picture relationship of the entity known as Halter Financial Group is still well-hidden from SFM. Many of the deficient answers regard interrogatories and requests for production asking for information on the companies that have been defined in SFM's discovery as "Halter Financial Group and its

related entities." The definition provides very clear guidance on what is sought and also serves to show how complex this entity has been organized. Here are the entities which SFM has been able to identify in the public records and public filings: Halter Financial Group, LP; HFG GP, LLC; TPH Capital, LP; Bellfield Capital Partners, LP; River Green Capital, LLC; Colhurst Capital LP; TPH Capital GP, LLC; Bellfield Capital Partners, LP; Bellfield Capital Management, LLC; River Green Capital, LLC; Colhurst Capital, L.P.; Colhurst Capital GP, LLC; HFG Consulting, L.L.C.; The Halter Group, Inc.; and Halter Financial Group, Inc. SFM suspects yet other entities are involved in the chain and still does not have a clear answer as to what entity or entities (if it is a conglomerate) are the parent companies of the enterprise doing business as Halter Financial Group. Halter's evasiveness on this issue has made it impossible for SFM to evaluate its case.

Specifically, Halter has identified eight interrogatories and eight requests for production to which a deficient answer has been provided. The majority concern the issue outlined above. A few requested information about other lawsuits of which Halter was aware. One interrogatory requested a list of assets and liabilities to check the veracity of the representation that Halter could have paid the entirety of the take-or-pay contract. Another requested information that was represented on the Halter Financial Group's website that Halter given interviews to major television, radio and print organizations and testimony in front of a U.S. Congressional Committee. Another interrogatory sought the factual basis upon which Halter pleaded an affirmative defense. SFM adopts as its arguments the entirety of Exhibit A, SFM's deficiency letter to Halte,r in support of each specific item listed therein.

### III.   CONCLUSION

SFM respectfully requests that this Court enter an order requiring defendant Timothy P. Halter to answer the interrogatories and produce the documents outlined in Exhibit A to the Motion to Compel Discovery Responses.

By Attorneys:

KANTROW, SPAHT, WEAVER & BLITZER
(A PROFESSIONAL LAW CORPORATION)
445 North Boulevard, Suite 300 (70802)
P. O. Box 2997
Baton Rouge, Louisiana 70821-2997
Telephone: (225) 383-4703
Facsimile: (225) 343-0630

By:   /s/ Keith J. Fernandez
      Connell L. Archey (#20086)
      Keith J. Fernandez (#33124)
Attorneys for **Southern Filter Media, LLC**

### CERTIFICATE

I hereby certify that on the 5th day of February, 2014, I electronically filed the Motion to Compel and the Memorandum in Support with the Clerk of Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

      /s/ Keith J. Fernandez
         Keith J. Fernandez