## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

SOUTHERN FILTER MEDIA, LLC                          CIVIL ACTION

VERSUS                                             NO. 13-116-JJB-RLB

TIMOTHY P. HALTER

## ORDER

Before the Court is Plaintiff Southern Filter Media, L.L.C.'s (SFM or Plaintiff) Motion to Compel Discovery Responses filed on February 5, 2014. (R. Doc. 34).  On February 14, 2014, Defendant Timothy P. Halter (Halter or Defendant) filed a Response. (R. Doc. 39).  For the reasons given below, Plaintiff's Motion to Compel is **GRANTED IN PART AND DENIED IN PART**.

## I.      BACKGROUND

In this action, Plaintiff alleges fraud, misrepresentation and conspiracy involving the negotiation and execution of a Master Service Agreement (MSA) between SFM and Titan Sand USA, L.L.C. (Titan) and a Performance Guaranty signed by Timothy P. Halter wherein Halter Financial Group, L.P. guaranteed Titan's performance under the MSA. (R. Doc. 1).[1]  Ultimately, Titan defaulted under the terms of the MSA and declared bankruptcy.  SFM made a demand upon Halter Financial Group, L.P., per the terms of the Performance Guaranty.  SFM alleges that upon this demand, Halter informed SFM that Halter Financial Group, L.P. was a subsidiary of the Halter Financial Group and had limited assets.  Approximately five months later, Halter

---

[1] The Performance Guaranty was signed by Halter on September 27, 2011. (R. Doc. 8-1 at 3).  The MSA was entered into on September 29, 2011. (R. Doc. 1, ¶ 13).

Financial Group, L.P. declared bankruptcy.  SFM alleges that it is owed millions of dollars under the terms of the MSA and Performance Guaranty.

In the Complaint against Timothy P. Halter, SFM alleges that certain representations were made by Defendant and other individuals affiliated with Halter Financial Group, L.P. in order to induce SFM to enter into the MSA with Titan.  SFM was told that "Halter Financial Group and Halter had the wealth to easily pay the entire MSA if necessary" and that Matthew Bryant of SFM "was directed to the Halter Financial Group's website to assure himself that Halter Financial Group was an established, capitalized entity with the resources to respond should Titan be unable to perform and that SFM could rely upon the financial strength of the Halter Financial Group to ensure that Titan performed under the long-term contract." (R. Doc. 1 at ¶ 9).  SFM alleges that "Halter actively and knowingly defrauded SFM by having Halter FG, a financial shell, sign the Performance Guaranty notwithstanding Halter's knowledge that SFM was relying upon the financial strength of the Halter Financial Group to guarantee the MSA." (R. Doc. 1 at ¶ 28).  SFM further alleges that Halter "personally conspired with Titan through its principals . . . and Halter FG to defraud SFM, knowing that Halter FG did not have the ability to perform under the Performance Guaranty as represented." (R. Doc. 1 at ¶ 30).

In the Motion to Compel, Plaintiff argues that certain responses to interrogatories and requests for production of documents made by Defendant are insufficient.  In support of the Motion, Plaintiff attaches a "deficiency letter" that sets forth the discovery requests at issue, the responses by Defendant, and Plaintiff's assertions of insufficiency as to each response provided (R. Doc. 34-2).  No additional argument or analysis has been provided to the Court.  The Motion to Compel is directed to these specific Interrogatories and Requests for Production.  The

Interrogatories at issue are numbers 3, 4, 6, 11, 15, 19, 22 and 29.[2]  The Requests for Production at issue are numbers 2, 8, 9, 10, 16, 21, 23 and 27.

In response to the discovery demands by Plaintiff, Defendant has produced over 500 pages of discovery that was a result of a search of the files of Halter Financial Group, L.P. and its general partner Halter Financial Group GP, L.L.C. (HFG GP, L.L.C.); Halter's own files and correspondence; and certain files of Titan that were accessible.  In addition, information regarding Halter Financial Group, L.P.'s finances has also been produced.  (R. Doc. 41 at 2-3). Plaintiff, unsatisfied with the sufficiency of these responses, filed the instant Motion. (R. Doc. 34).

## II.    LAW AND ANALYSIS

Rule 26(b)(1) of the Federal Rules of Civil Procedure allows a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  A relevant discovery request seeks information that is "either admissible or reasonably calculated to lead to the discovery of admissible evidence." *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1484 (5th Cir. 1990) (quoting Fed. R. Civ. P. 26(b)(1)).  Nonetheless, a party may withhold otherwise discoverable information on the basis of privilege. Fed. R. Civ. P. 26(b)(1). In addition, the "district court must limit otherwise permissible discovery if it determines that 'the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of discovery in resolving the issues." *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011) (quoting Fed. R. Civ. P. 26(2)(C)(iii)).

---

[2] The parties were able to reach an agreement regarding the number of interrogatories as allowed by Rule 33 of the Federal Rules of Civil Procedure without court intervention. (R. Doc. 28).

Rule 33 of the Federal Rules of Civil Procedure provides for the service of written interrogatories.  A party seeking discovery under Rule 33 may serve interrogatories on any other party and the interrogatory "may relate to any matter that may be inquired into under Rule 26(b)." Fed. R. Civ. P. 33(a)(2).  Rule 34 of the Federal Rules of Civil Procedure provides for the discovery of documents and tangible items.  A party seeking discovery must serve a request for production on the party believed to be in possession, custody, or control of the documents or other evidence. Fed. R. Civ. P. 34(a). The request is to be in writing and must set forth, among other things, the desired items with "reasonable particularity." Fed. R. Civ. P. 34(b)(1)(A).

Rule 34 requires that a responding party produce responsive documents that are within their "possession, custody or control."  Documents are deemed to be within the "possession, custody or control" of a responding party if that party either has "actual possession, custody or control" of the documents or if that party "has the legal right to obtain the documents on demand or has the practical ability to obtain the documents from a non-party to the action."[3] *Monroe's Estate v. Bottle Rock Power Corp.*, No. 03-2682, 2004 WL 737463, at *10 (E.D. La. April 2, 2004).

If a party fails to answer interrogatories or permit inspection as required under Rules 33 and 34, the party seeking discovery may move to compel disclosure and for appropriate sanctions under Rule 37.  An "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4).

1.      **Individual Discovery Reponses**

Plaintiff's Motion to Compel seeks an order from the Court directing Defendant to "fully respond" to 8 specific Interrogatories and 8 Requests for Production (R. Doc. 34-1).  Plaintiff's

---

[3] Defendant has represented that he has no interest or involvement with certain entities that have been identified through discovery.  To the extent defendant is ordered to provide additional discovery consistent with this Ruling, such order is limited to any such responsive documents that the defendant can produce consistent with Rule 34.

Motion, however, does not provide any separate analysis regarding the individual requests, relying instead on the replies contained in the deficiency letter.

Defendant has objected to the Motion to Compel, claiming that he "has complied with his discovery obligations and provided all non-privileged information and documents that are within his possession, custody or control and relevant to [Plaintiff's] claims and [Defendant's] defenses." (R. Doc. 39 at 2-3).  Defendant's response specifically addresses each of the discovery requests at issue. (R. Doc. 39 at 5-22).

A.     **Interrogatory No. 3**

i.     **Part 1 of Interrogatory No. 3**

Interrogatory No. 3 is broken into two parts.  The first part of the Interrogatory seeks "the complete ownership of the business that operates as 'Halter Financial Group,' from the parent company (or multiple parents if it is a conglomerate) down all the way to the individual ownership level . . . as well as any affiliates." (R. Doc. 34-2 at 2).  Interrogatory No. 3 specifically defines "Halter Financial Group" as used in that Interrogatory as "any entity that is represented on the website http://www.halterfinancial.com." (R. Doc. 34-2 at 2).  The Interrogatory attached "the homepage" from September 20, 2013 for reference by Defendant. Based on the context, the Court assumes that this is the same website to which Matthew Bryant of SFM was directed to as alleged in the Complaint. (R. Doc. 1 at 3).  The Motion to Compel does not, however, provide the Court with that attached homepage[4] and does not provide any listing of any entities represented on that website.

---

[4] The complete Interrogatories and Requests for Production, and attachments, as well as Defendant's responses, were included with the Defendant's Response to Plaintiff's Motion to Compel. (R. Docs. 39-1 and 39-2).

In response, Defendant argues that Interrogatory No. 3 is vague, ambiguous and seeks information about companies that were not parties to the Master Supply Agreement or Performance Guaranty.

Notwithstanding these objections, Defendant identified Halter Financial Group, L.P. as the entity represented on the website and operating the website from its formation in August 2005 until it filed for bankruptcy relief in October 2012.[5]   Halter Financial Group, L.P. is a party to the Performance Guaranty.  Based on the allegations in the complaint, discovery regarding all aspects of this entity, as requested by Plaintiff, is appropriate.

Defendant identified the general partner of Halter Financial Group, L.P. as HFG GP, L.L.C.  Defendant identified the limited partners of Halter Financial Group, L.P. as TPH Capital, L.P., Colhurst Capital, L.P., Rivergreen Capital, L.L.C. and Bellfield Capital, L.P.  These entities are also identified as the members of HFG GP, L.L.C. (R. Doc. 39-2 at 6).

Therefore, there are four entities that comprise the individual members of HFG GP, L.L.C., which is the general partner of Halter Financial Group, L.P.  Those same four entities also constitute the limited partners of Halter Financial Group, L.P.  Defendant's discovery responses provide no breakdown of the share of ownership interest in Halter Financial Group, L.P. between its general partner and limited partners.[6]

Defendant is **ORDERED** to provide a breakdown of the ownership interests of the general and limited partners of Halter Financial Group, L.P.

---

[5] Plaintiff also identified the entity currently operating the website as HFG Consulting, L.L.C. (R. Doc. 34-2).  This entity was not formed until August 29, 2012. (R. Doc. 39-3).

[6] Defendant's Response to Interrogatory No. 6 does provide that TPH Capital, L.P. owns 39.6% of the partnership interest of Halter Financial Group, L.P. and also owns 50% of the membership interest in HFG GP, L.L.C. (R. Doc. 39-2 at 7).

With respect to these four remaining entities, Defendant's discovery responses address their structure and ownership in part:

(a) **TPH Capital, L.P.:**  Defendant identifies himself as "a limited partner" of TPH Capital, L.P. and that he owns 99.9% of its partnership interest.  Defendant does not, however, identify any other limited partners.  Defendant identifies the general partner as TPH Capital, LLC and represents that he owns 99.9% of that entity. Defendant does not, however, identify any other members of TPH Capital, LLC.

Defendant is **ORDERED** to identify the remaining entities or individuals that are part of TPH Capital, L.P. and the ownership percentages of such entities.  To the extent those responses identify additional entities, Defendant shall continue identifying the ownership and structure until arriving at the individual ownership level as requested in Interrogatory No. 3.

(b) **Rivergreen Capital, L.L.C. and Colhurst Capital, L.P.:**  Defendant's response to Interrogatory No. 3 provides no information regarding Rivergreen Capital, L.L.C. or Colhurst Capital, L.P.  In the declaration submitted with his Opposition, he states "I do not own and have never owned any interest, directly or indirectly, in: . . . River Green Capital, L.L.C.,[7] Colhurst Capital, L.P." (R. Doc. 39-3 at 1).  Defendant does not, however, indicate that he lacks knowledge sufficient to answer the Interrogatory as it relates to these entities.

---

[7] Defendant's response to Interrogatory No. 3 indicates that "Rivergreen Capital L.L.C." is the entity that is one of the limited partners in Halter Financial Group, L.P. (R. Doc. 39-2 at 6).  His affidavit professes no ownership interest or position in "River Green Capital, L.L.C." (R. Doc. 39-3).  It is not clear if the spacing of "Rivergreen" is of significance or if these refer to the same entity.  Defendant shall notify Plaintiff's counsel no later than April 1, 2014 if these are not the same entity.

In addition, if they are different entities, then Defendant is **ORDERED** to provide complete responses to all discovery as set forth in this Order for the entity "Rivergreen Capital L.L.C" and any other entity that comprises HFG GP, L.L.C. as set forth herein.

If Defendant has such knowledge, he is **ORDERED** to identify the remaining entities or individuals that are part of Rivergreen Capital, L.L.C. and Colhurst Capital, L.P. and the ownership percentages of such entities.  To the extent those responses identify additional entities, Defendant shall continue identifying the ownership and structure until arriving at the individual ownership level as requested in Interrogatory No. 3.

**(c) Bellfield Capital, L.P.:**  Other than identifying Bellfield Capital, L.P. as an entity within the chain of ownership of Halter Financial Group, L.P., Defendant provided no other information about this entity.[8]

Defendant is **ORDERED** to identify the remaining entities or individuals that are part of Bellfield Capital, L.P. and the ownership percentages of such entities.  To the extent those responses identify additional entities, Defendant shall continue identifying the ownership and structure until arriving at the individual ownership level as requested in Interrogatory No. 3.

### ii.    Part 2 of Interrogatory No. 3

The second portion of Interrogatory No. 3 requests "all entities that have been a part of the chain of ownership of the enterprise known as 'Halter Financial Group' (<u>as defined herein</u>) from 2001 to present." (R. Doc. 39-2 at 5-6) (emphasis added).  Despite incorporating the previous definition of "Halter Financial Group" as those entities represented on the website, the Interrogatory then seemingly contradicts that definition and states that it includes entities <u>not</u> represented on the aforementioned website.  No guidance is provided on how Defendant is

---

[8] The affidavit by defendant indicates that he does not own and has never owned any interest in "Bellfield Capital Partners, L.P." or "Bellfield Capital Management, L.L.C." and has never been a director, officer, manager, or employee of either company (R. Doc. 39-3 at 1).  His discovery response to Interrogatory No. 3, however, identifies the entity responsive to that request as "Bellfield Capital, L.P."  Defendant does not, however, indicate that he lacks knowledge sufficient to answer the Interrogatory as it relates to these entities.  Should the defendant likewise affirm that he has no affiliation with Bellfield Capital, L.P., he must still answer the Interrogatory as ordered unless he lacks knowledge sufficient to make such a response.

supposed to reconcile these inconsistent definitions.  The Motion to Compel also provides no explanation for the timeframe specified in this portion of the Interrogatory.  To the extent that the "chain of ownership" requested includes the various entities comprising Halter Financial Group, L.P., even if those specific entities are not on the website, then the response provided above (and this Order regarding any deficient answers) are sufficient.  No further response is required or ordered.

### B.      Interrogatory No. 4

Interrogatory No. 4 requests the officers and/or management of the entities identified in Interrogatory No. 3, as well as the same for Titan. (R. Doc. 39-2 at 6).  Titan was a party to the Master Service Agreement.  "Titan" is defined as "Titan Sand USA, L.L.C. or any related entity, including Titan Proppiants, L.L.C., or any of its managers, members, employees, agents, or representatives." (R. Doc. 39-1 at 6).  Defendant objected to this Interrogatory on the same grounds as Interrogatory No. 3.

In his Answer to Interrogatory No. 4, Defendant provided information regarding the managers and officers of HFG GP, L.L.C.  Defendant provided no such information for the four individual members of HFG GP, L.L.C.  For the same reasons set forth above, the Court finds that discovery of this information is permissible.

Defendant is **ORDERED** to provide the officers and management of the individual members of HFG GP, L.L.C.  To the extent that the individual members of HFG GP, L.L.C. are comprised of incorporated or unincorporated entities, Defendant is to provide the ownership details regarding each of those entities (as ordered in response to Interrogatory No. 3) and the officers and/or management of any of those entities (in response to Interrogatory No. 4).

### C.      Interrogatory No. 6

Interrogatory No. 6 requests that Defendant provide "his role; title, if any; and ownership interest in all entities identified in connection with Interrogatory 3, Titan, and any entity defined herein as Halter Financial Group and its related entities." (R. Doc. 39-1 at 8).  "Halter Financial Group and its related entities" is specifically defined.[9] (R. Doc. 39-1 at 6).

Defendant provided a partial response, identifying his ownership and positions in HFG GP, L.L.C., TPH Capital, L.P., and TPH Capital GP, L.L.C.[10]  He also described his ownership interest and positions with respect to Titan. (R. Doc. 39-2 at 7).

There are 13 specific entities identified in the definition of "Halter Financial Group and its related entities" not counting the request for parent entities and those repeated twice.  Some of those entities have been identified as part of the ownership of Halter Financial Group, L.P.  As set forth above with respect to Interrogatory No. 3, Defendant's response is lacking in that it failed to adequately identify the chain of ownership of Halter Financial Group, L.P. through its general partner, HFG GP, L.L.C.  As Defendant complies with this Order identifying any remaining entities in response to Interrogatory No. 3,

Defendant is also **ORDERED** to identify his role, title or ownership in any such entities. Defendant's affidavit also addresses other entities contained in the list.  Defendant states that he has never had an ownership interest or a position in Bellfield Capital Partners, L.P., River Green

---

[9] The definition includes 16 different entities.  The first is a non-specific category requesting the parent entity of the enterprise doing business as Halter Financial Group.  No parent entity has been identified.  The list also includes two entities twice – River Green Capital, LLC and Bellfield Capital Partners, LP.

[10] The response appears to have a typographical error indicating that this entity is TPH "Captial" GP, L.L.C.

Capital, L.L.C.,[11] Colhurst Capital, L.P., Bellfield Capital Management, L.L.C., or Colhurst Capital GP, L.L.C.

The remaining entities that have not been referenced or otherwise identified are HFG Consulting, L.L.C., The Halter Group, Inc., and Halter Financial Group, Inc.  Considering the information before the Court regarding the ownership structure of the various entities at issue, the similarity between the names of various entities, the allegations in the Complaint, the website identifying the entity as "The Halter Financial Group," and the limited nature of the information requested in Interrogatory No. 6,

Defendant is **ORDERED** to identify his role, title or ownership in HFG Consulting, L.L.C., The Halter Group, Inc., and Halter Financial Group, Inc.

**D.      Interrogatory No. 11**

Interrogatory No. 11 requests that Defendant state whether "Halter Financial Group," as defined in Interrogatory No. 3, and any of the entities defined as "Halter Financial Group and its related entities" are still operating as "going concerns." (R. Doc. 39-1 at 9).  Defendant objected because the interrogatory called for information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence as well as overly broad and therefore unduly burdensome.  Defendant makes these same arguments in his Opposition to the Motion to Compel. (R. Doc. 39 at 7-8).

Defendant did provide a partial response, stating that Halter Financial Group, L.P. and HFG GP, L.L.C. are no longer operating and that the four limited partners of Halter Financial Group, L.P. (which are also the four members of HFG GP, L.L.C.) are operating as going concerns. (R. Doc. 39-2 at 9).

---

[11] As set forth above, if this entity is not the same as Rivergreen Capital, L.L.C., then Defendant's Answer to Interrogatory No.6 is deficient and he is **ORDERED** to comply with this Order in all aspects regarding Rivergreen Capital, L.L.C. and any other entity that comprises HFG GP, L.L.C.

As Defendant complies with this Order identifying any remaining entities in response to Interrogatory No. 3,

Defendant is also **ORDERED** to identify whether any of those entities are going concerns for the reasons set forth above.

To the extent Defendant has a role, title and/or ownership interest in any of the other entities contained in his response to Interrogatory No. 6 as ordered above,

Defendant is also **ORDERED** to identify whether any of those entities are going concerns.

### E.      Interrogatory No. 15

Interrogatory No. 15 requests information regarding whether Defendant has ever filed or provided testimony in any type of proceedings before any court, administrative entity or alternative dispute resolution proceeding. (R. Doc. 39-1 at 10).  There is no time limitation or subject matter restriction.  The Motion to Compel, likewise, provides no argument or representation as to why this information is discoverable.  Notwithstanding his objection, Defendant responded that he had testified in a bankruptcy proceeding involving Halter Financial Group, L.P. as well as in a friend's divorce proceeding.[12]  Defendant's response does not indicate if these are the only times he has given testimony. (R. Doc. 39-2 at 10).

The Court agrees with Defendant that the request is too broad.  *See F & A APLC v. Core Funding Group, L.P.*, No. 07-543, 2009 WL 2214184, at *1 n.1 (M.D. La. July 23, 2009) ("Evidence of other lawsuits is typically only relevant if those lawsuits involve similar claims and can be used to establish a pattern or a habit or routine practice.").

---

[12] Defendant's Answer to Interrogatory No. 22 states that he has "never been a party to any criminal or civil action." (R. Doc. 39-2 at 13).

The Court finds that the request should be limited.  To the extent there are other circumstances where Defendant has given testimony,

Defendant is **ORDERED** to identify any such instances if they occurred in any proceeding involving any allegation that Defendant – or an entity Defendant owns or is affiliated with as a member, manager, officer, or agent – fraudulently induced a party to take some action (such as enter a contract) based on intentional or negligent misrepresentations, if such proceeding occurred no later than 5 years prior to filing of this lawsuit.

### F.      Interrogatory No. 19

Interrogatory No. 19 requests facts supporting an affirmative defense alleged by Defendant. (R. Doc. 39-1 at 11).  Defendant objects to this Interrogatory at this time because insufficient discovery has been conducted. (R. Doc. 39-2 at 12).  Defendant alleges that SFM has impeded his efforts to depose the individuals who attended the meeting at which SFM alleges that Defendant made misrepresentations.  SFM requests that the Court allow Interrogatory No. 19 to be answered following those depositions.

These depositions were the subject of a previous discovery related motion (Pl.'s Mot. for Protective Order, R. Doc. 37).  That motion was denied and the depositions were scheduled to have occurred on February 25-26, 2014. (R. Doc. 42).

Now that the depositions have taken place, Defendant is **ORDERED** to respond fully to Interrogatory No. 19.

### G.      Interrogatory No. 22

Interrogatory No. 22 requests information regarding any and all judicial proceedings in which Defendant, Halter Financial Group, L.P., or HFG GP, L.L.C. have been a party. (R. Doc.

39-1 at 12).  As with Interrogatory No. 15, there is no time limitation or subject matter restriction.

Notwithstanding his objection, Defendant responded that he has never been a party to any criminal or civil action.  Defendant also responded regarding a bankruptcy proceeding to which Halter Financial Group, L.P. and HFG GP, L.L.C. were parties.  It is unclear from the response, however, whether this was the only proceeding with these entities as parties. (R. Doc. 39-2 at 13).

Defendant argues that this request is overly broad.  The Court agrees.  As with Interrogatory No. 15, the Court finds that the request should be limited.  Therefore,

**IT IS ORDERED** that to the extent Halter Financial Group, L.P., or HFG GP, L.L.C. have been a party to any proceeding occurring no later than 5 years prior to the filing of this lawsuit, and such proceeding involved any allegation that Defendant, Halter Financial Group, L.P., or HFG GP, L.L.C., fraudulently induced a party to take some action (such as entering a contract) based on intentional or negligent misrepresentations, Defendant must supplement his response to Interrogatory No. 22 identifying any such proceedings.

**H.    Interrogatory No. 29**

Interrogatory No. 29 asks Defendant to identify all of his assets and liabilities and provide values for said assets and liabilities. (R. Doc. 39-1 at 13).  Defendant objects to this Interrogatory as it is irrelevant, as Defendant's financial condition has not been made an issue in this case because Plaintiff is not seeking punitive damages and there is no allegation that Defendant personally guaranteed any liability in this case. (R. Doc. 39-2 at 14).  In addition, Defendant argues that the interrogatory is unduly burdensome as it contains no limitation.  It would force him "to catalog each and every piece of real and personal property that he owns."

Plaintiff argues that it has specifically alleged that statements were made describing Halter's ability to personally pay amounts well over the amount of the take-or-pay contract.

In the Complaint, Plaintiff alleges that "Jeremy Warren specifically stated that Halter Financial Group and Halter had the wealth to easily pay the entire MSA if necessary." (R. Doc. 1, ¶9). The Complaint does not allege that Halter made this representation, adopted it, or was even aware that it was made. The Complaint further alleges that only Halter Financial Group guaranteed the performance of Titan under the MSA per the Performance Guaranty. There is simply no allegation that Defendant personally guaranteed any liability or in any other way made his personal finances relevant to the causes of action alleged by Plaintiff. While Defendant's interests in specific entities associated with Halter Financial Group, L.P., as set forth above, may be discoverable, those interests are sufficiently covered in the other Interrogatories and may be further explored in subsequent discovery.

Therefore, **IT IS ORDERED** that Plaintiff's Motion in **DENIED** regarding Interrogatory No. 29.

## I.      Request for Production No. 2

Request for Production No. 2 asks that Defendant produce "all documents relating in any way to any lawsuit, court proceeding, or other matter identified by you in response to Interrogatories Nos. 15 and 22." (R. Doc. 39-1 at 13).

Defendant objected on several grounds, including that the Request is based on Interrogatories to which he also objects. With respect to Interrogatories Nos. 15 and 22, the Court has ordered Defendant to supplement his response for any other lawsuits limited to the subject matters and timeframe specified above. Consistent with those instructions,

15

Plaintiff's Motion regarding Request for Production No. 2 is **GRANTED IN PART** and Defendant is likewise **ORDERED** to supplement his response to Request for Production No. 2 based on any lawsuits so identified.  Defendant may re-assert his objections, in whole or in part, based on any such lawsuits.[13]  Should Plaintiff believe the response remains insufficient, the parties shall confer in good faith to resolve the matter before seeking additional Court involvement.

      **J.**      **Request for Production Nos. 8, 9 and 10**

Request for Production No. 8 requests that Defendant "produce and specifically identify all documents relating to the take-or-pay contract or the Guaranty which were sent to, sent by, and/or contemporaneously viewed by you personally." (R. Doc. 39-1 at 14).  Request for Production No. 9 requests that Defendant produce "all documents and correspondence between you and Titan related to the take-or-pay contract and the Guaranty." (R. Doc. 39-1 at 14). Request for Production No. 10 seeks "all documents and correspondence between you and Halter Financial Group and its related entities related to the take-or-pay contract and the Guaranty." (R. Doc. 39-1 at 14).

In response, Defendant represents that he "has searched his correspondence and files and produced copies of all responsive documents that are within his possession, custody, or control, with the exception of certain documents protected by the attorney-client privilege." (R. Doc. 39 at 15).  Defendant also searched "the correspondence of former employees of Titan Sand and Titan Proppants that he is able to access" and produced all responsive, non-privileged documents. (R. Doc. 39 at 16).  Defendant further represents that a privilege log was being provided to Plaintiff contemporaneously with the filing of his Opposition. (R. Doc. 39 at 15).

---

[13] The Court has some concern regarding the scope of this request and the extent of potentially responsive documents should any lawsuits be identified.  Without knowing the nature of any such lawsuit and the scope of covered documents, however, it is premature to deny the request as unduly burdensome at this time.

The Court finds that Defendant's response to Requests for Production Nos. 8 and 9 sufficiently meets his obligations pursuant to Rule 34.  Therefore,

**IT IS ORDERED** that Plaintiff's Motion regarding Requests for Production Nos. 8 and 9 is **DENIED**.

With respect to Request for Production No. 10, Plaintiff requests documents and correspondence "related to the take-or-pay contract and the Guaranty" between Defendant and "Halter Financial Group and its related entities." (R. Doc. 39-1 at 14).  Despite Defendant's argument that the Plaintiff's definition of "Halter Financial Group and its related entities" is unclear or circular, this phrase is defined and identifies a list of entities that are included.[14] Consistent with the Court's Order regarding additional entities to be identified under Interrogatory No. 3, any such additional entities would also be covered by this definition.  The request is also limited to documents and correspondence specifically related to the take-or-pay contract and the Guaranty.

Defendant's argument that "fourteen of the sixteen entities" listed in the definition had no connection to the MSA or Performance Guaranty and therefore there is "no reason to believe that any of those companies would have" responsive documents is unavailing. (R. Doc. 39 at 17). Therefore,

If the non-privileged documents exist and they are in Defendant's possession, custody or control, Defendant is **ORDERED** to produce those documents.

**K.     Request for Production No. 16**

Request for Production No. 16 seeks any statements made by Defendant related to the take-or-pay contract.  Defendant responds by stating that the "only tangible items responsive to Request 16 are protected by the work-product doctrine." (R. Doc. 39 at 18).  Defendant also

---

[14] Unlike Interrogatory No. 3, this request does not contain contradicting definitions.

previously represented that a privilege log was being produced to Plaintiff.  There is nothing before the Court to suggest that Defendant's assertion of privilege is improper or that he has provided insufficient information to Plaintiff to assess the claim as required by Rule 26 of the Federal Rules of Civil Procedure.  As such, Defendant's response is sufficient and

**IT IS ORDERED** that Plaintiff's Motion is **DENIED** with respect to Request for Production No. 16.

### L.      Request for Production No. 21

Request for Production No. 21 requests production of certain documents supporting Defendant's Answer to Interrogatory No. 24.  Notwithstanding Defendant's objections to Request for Production No. 21 (and apparently Interrogatory No. 24 as well), Defendant has represented to the Court that he produced responsive records as requested. (R. Doc. 39 at 19).  Plaintiff does not point to any deficiency in this response.  As such,

**IT IS ORDERED** that Plaintiff's Motion is **DENIED** with respect to Request for Production No. 21.

### M.      Request for Production No. 23

Request for Production No. 23 asks for "all information that was available on websites for Halter Financial Group and its related entities and Titan from 2009 to present." (R. Doc. 39-1 at 16).  In response, Defendant has produced all documents within his possession, custody, or control that contain information that was available on Titan Proppant's website. (R. Doc. 39 at 20).  In addition, Halter Financial Group, L.P. has restored the data that was available on its website from 2009 to the present and that data has been provided to SFM.

As set forth above, Halter Financial Group, L.P. was the entity operating the website www.halterfinancial.com during the time period relevant to the Complaint.  The parties

acknowledge that this is the website that Plaintiff alleges it was directed to "for information regarding their ability to pay." (R. Doc. 39 at 20). Having provided the information contained on that website, Defendant objects to Request for Production No. 23 on the grounds that it seeks any additional documents on any other websites and that to the extent it goes beyond Plaintiff's allegation regarding the specific website above, the request is overly broad and seeks irrelevant information. (R. Doc. 39 at 20-21). The Court agrees. Beyond what has been provided by Defendant, there is nothing to indicate in Plaintiff's Motion or in the allegations of the Complaint that the content of the websites of any other entity is discoverable in this matter. There is likewise no allegation that anyone on behalf of Plaintiff was directed to any other website or aware of any contents of any website during the course of negotiation and execution of either the MSA or the Performance Guaranty. Finally, even assuming that such websites did exist, portions of the time period requested by Plaintiff – from 2009 to present – would have no bearing on the circumstances surrounding the execution of those agreements.

Defendant has provided responsive information regarding the websites of the parties that executed the agreements in question. This includes the content of the website that Plaintiff alleges it was specifically directed to during the negotiation and execution of the MSA and Performance Guaranty. As such, Defendant's response is sufficient and

**IT IS ORDERED** that Plaintiff's Motion is **DENIED** with respect to Request for Production No. 23.

### N.    Request for Production No. 27

Request for Production No. 27 requests production of "all interviews by major television, radio and print organizations and any testimony in front of a U.S. Congressional Committee you have given on the topic of international companies accessing the U.S. capital markets." (R. Doc.

19

39 at 17).  Defendant objects to this request because it seeks information neither relevant to any party's claim or defense nor reasonably calculated to lead to discovery of admissible evidence. Plaintiff argues that the website for Halter Financial Group, L.P. specifically states that Halter gave these interviews and testimony and that Plaintiff has the right to determine the veracity of this claim.

As noted above, this website was maintained by Halter Financial Group, L.P., a party to the Performance Guaranty.  In addition, Defendant has an ownership interest in that entity through its general and limited partners.  Request for Production No. 27 is directed at specific references made on that website and is narrow in scope.  Contrary to Defendant's argument that SFM has not alleged that it relied on such representation(s) when deciding to execute the MSA, the Complaint alleges that SFM was specifically directed to the website and that Halter negligently misrepresented or allowed material facts to be misrepresented to SFM which induced SFM to enter into the MSA with Titan based on the Performance Guaranty signed by Halter Financial Group, L.P. (R. Doc. 1, ¶ 31).  Discovery regarding these representations is permissible.  Therefore,

**IT IS ORDERED** that Defendant must fully respond to Request for Production 27.

**2.     Expenses**

Under Rule 37(a)(5)(C), if a motion to compel discovery is granted in part and denied in part, a court may apportion the reasonable expenses for the motion.  Because the Motion to Compel has been granted in part and denied in part, the Court has determined that the parties shall each bear their own costs in connection with the Motion.

**III.     CONCLUSION**

For the reasons set forth above, Plaintiff's Motion to Compel Discovery Responses filed on February 5, 2014 (R. Doc. 34) is **GRANTED IN PART AND DENIED IN PART**. Defendant shall supplement its discovery responses as set forth above no later than **April 1, 2014**.

Signed in Baton Rouge, Louisiana, on March 18, 2014.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**