UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **SOUTHERN FILTER MEDIA, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO. 13-116-JJB-RLB** |
| **TIMOTHY P. HALTER** | |

**ORDER**

Before the Court is Defendant Timothy P. Halter's (Halter or Defendant) Motion to Compel a Discovery Response filed on May 20, 2014. (R. Doc. 49). On June 10, 2014, Plaintiff Southern Filter Media, L.L.C. (SFM or Plaintiff) filed an Opposition. (R. Doc. 54). Halter has filed a Reply. (R. Doc. 65). For the reasons given below, Defendant's Motion to Compel is **DENIED**.

**I.   BACKGROUND**

In this action, Plaintiff alleges fraud, misrepresentation and conspiracy involving the negotiation and execution of a Master Service Agreement (MSA) between SFM and Titan Sand USA, L.L.C. (Titan) and a Performance Guaranty signed by Timothy P. Halter wherein Halter Financial Group, L.P. guaranteed Titan's performance under the MSA. (R. Doc. 1).[1] Ultimately, Titan defaulted under the terms of the MSA and declared bankruptcy. SFM made a demand upon Halter Financial Group, L.P., per the terms of the Performance Guaranty. SFM alleges that upon this demand, Halter informed SFM that Halter Financial Group, L.P. was a subsidiary of the Halter Financial Group and had limited assets. Approximately five months later, Halter

---

[1] The Performance Guaranty was signed by Halter on September 27, 2011. (R. Doc. 8-1 at 3). The MSA was entered into on September 29, 2011. (R. Doc. 1, ¶ 13).

Financial Group, L.P. declared bankruptcy. SFM alleges that it is owed millions of dollars under the terms of the MSA and Performance Guaranty.

In the Complaint against Timothy P. Halter, SFM alleges that certain representations were made by Defendant and other individuals affiliated with Halter Financial Group, L.P. in order to induce SFM to enter into the MSA with Titan.[2] SFM was told that "Halter Financial Group and Halter had the wealth to easily pay the entire MSA if necessary" and that Matthew Bryant of SFM "was directed to the Halter Financial Group's website to assure himself that Halter Financial Group was an established, capitalized entity with the resources to respond should Titan be unable to perform and that SFM could rely upon the financial strength of the Halter Financial Group to ensure that Titan performed under the long-term contract." (R. Doc. 1 at ¶ 9). SFM alleges that "Halter actively and knowingly defrauded SFM by having Halter FG, a financial shell, sign the Performance Guaranty notwithstanding Halter's knowledge that SFM was relying upon the financial strength of the Halter Financial Group to guarantee the MSA." (R. Doc. 1 at ¶ 28). SFM further alleges that Halter "personally conspired with Titan through its principals . . . and Halter FG to defraud SFM, knowing that Halter FG did not have the ability to perform under the Performance Guaranty as represented." (R. Doc. 1 at ¶ 30).

Through its Motion to Compel, Defendant seeks an order from the court requiring Matthew D. Bryant, the manager and chief operating officer of SFM, to answer a question posed during his deposition taken on February 25, 2014. (R. Doc. 49 at 1). Defendant claims that Mr. Bryant initially testified at his deposition that SFM did not discuss the need for a guarantee at the Meeting. (R. Doc. 49-1 at 2 (citing Bryant Dep. Tr. 55:6-57:17, 58:10-59:1, 60:10-61:15)).[3] Defendant further claims that after a break in the deposition, Mr. Bryant changed his testimony

---

[2] According to Defendant, these alleged representations were made at an August 9, 2011 meeting a SFM's facility ("Meeting"). (R. Doc. 49-1 at 1).
[3] Defendant attached the complete deposition transcript to the Motion. (*See* R. Doc. 49-3).

to assert that SFM sought a guarantee at the meeting. (*Id*. (citing Bryant Dep. Tr. 64:16-66:18)). Defendant claims that later in the deposition, Mr. Bryant admitted that seeking a guaranty was the idea of an SFM attorney. (*Id*. (citing Bryant Dep. Tr. 128:4-7). Defendant is seeking to obtain the date on which the SFM attorney advised Mr. Bryant to obtain a guarantee, a fact which Defendant claims is not protected by the attorney-client privilege. (R. Doc. 49-1 at 4-6).

In opposition, Plaintiff claims that before the break in the deposition, Mr. Bryant was only asked broad questions regarding what was discussed at the Meeting. (R. Doc. 54 at 5). When directly asked after the break, Mr. Bryant provided that a guarantee was discussed at the Meeting. (*Id*.). More importantly, Plaintiff also argues that Mr. Bryant claimed the attorney-client privilege when he was asked to identify who came up with the idea of a guarantee. (*Id*.) Plaintiff claims that Defendant's question regarding when Mr. Bryant's attorney recommended getting a guarantee would necessarily reveal attorney-client privileged information, including whether an attorney actual did advise Mr. Bryant to obtain a guarantee in the first place. (*Id*. at 5-7).

In reply, Defendant emphasizes that the date on which the SFM attorney allegedly advised Mr. Bryant to obtain a guarantee is central to its defense. (R. Doc. 65 at 1). Defendant claims that SFM only communicated with Halter once, during the Meeting on August 9, 2011, and, therefore, if SFM did not discuss the guaranty at the Meeting, then Halter could not have misled SFM with regard to the guaranty. (R. Doc. 65 at 1-2). Defendant further argues that neither Mr. Bryant nor his attorney asserted the attorney-client privilege when Mr. Bryant was asked who recommended that he seek a guaranty, opening up questioning on the issue of when Halter's attorney made such a recommendation. (R. Doc. 65 at 3).

3

## II. LAW AND ANALYSIS

Rule 26(b)(1) of the Federal Rules of Civil Procedure allows a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." A relevant discovery request seeks information that is "either admissible or reasonably calculated to lead to the discovery of admissible evidence." *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1484 (5th Cir. 1990) (quoting Fed. R. Civ. P. 26(b)(1)). Nonetheless, a party may withhold otherwise discoverable information on the basis of privilege. Fed. R. Civ. P. 26(b)(1).

Moreover, counsel may instruct a deponent not to answer when necessary to preserve a privilege. Fed. R. Civ. P. 30(c)(2). When a deponent refuses to answer a question during his deposition, the party seeking discovery may move the court for an order compelling an answer. *See* Fed. R. Civ. P. 37(a)(3)(B)(i). A deponent who relies on the attorney-client privilege for refusing to answer a question bears the burden of showing the applicability of the privilege. *See In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001).

Rule 501 of the Federal Rules of Evidence provides that "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501. There is no dispute that Louisiana law governs attorney-client privilege in this action. Article 506 of the Louisiana Code of Evidence codifies the attorney-client privilege:

> A client has a privilege to disclose and to prevent another person from disclosing a confidential communication . . . made for the purpose of facilitating the rendition of professional legal services to the client, as well as the perceptions, observations, and the like of the mental, emotional, or physical condition of the client in connection with such communication . . . .

La. Code Evid. art. 506(B). The attorney-client privilege does not generally extend, however, to the fact that an attorney represents a client. *See State v. Hayes*, 324 So. 2d 421, 423 (La. 1975). Furthermore, at least one Louisiana court has held that the attorney-client privilege does not

4

apply to when a client visits his attorney. *State v. Brown*, 115 So. 3d 564, 573 (La. App. 4th Cir. 2013).

Waiver of the attorney-client privilege occurs if the "holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the privileged matter." La. Code Evid. art. 502(A). Nevertheless, a "claim of privilege is not defeated by a disclosure which was compelled or made without opportunity to claim the privilege." La. Code Evid. art. 502(B).

### A. The Deposition Question

The instant dispute requires the court to interpret and contextualize certain questions, answers, and objections made during Mr. Bryant's deposition. At first, Mr. Bryant answered a general series of questions regarding the Meeting and was not asked specifically about the guarantee. (Bryant Dep. Tr. 55-61). Then, after a break, Mr. Bryant testified that a guarantee was discussed at the meeting. (*Id*. at 64-66). Much later in the deposition, the questioning attorney asked Mr. Bryant whose idea it was to ask for a guarantee:

> BY MR. ASTON:
>     Q.    Mr. Bryant, back after the date - - I mean, after the break.
>         Whose idea was it to ask for a guarantee?
>     A.    Attorney.
>     Q.    Okay.
>         Who decided that the limited partnership, Halter Financial Group, LP, not Halter Financial Group, Inc. would be the guarantor?
>     A.    I do not know the answer to that.
>     Q.    Do you know why there was no investigation of the assets or finances of Halter Financial Group, LP?

(Bryant Depo. Tr. 125:3-15). Defendant claims that the deponent's answer of "Attorney" to the question "Whose idea was it to ask for a guarantee" is an admission that an unidentified attorney provided the idea of obtaining a guarantee and, therefore, the attorney-client privilege has been

waived with respect to communications involving that decision. Although the current motion only seeks the answer to one follow-up question in the deposition, Defendant does not specify any limit to the asserted waiver or the scope of additional discovery about any such attorney-client communications that he believes have now been waived. Immediately after Mr. Bryant's response, the questioning attorney did not seek the name of the attorney or the date of the consultation. Instead, he turned to questions regarding the choice of the guarantor itself.

A few pages later in the deposition transcript, the questioning attorney returned to his line of questioning regarding who recommended obtaining a guarantee, and plaintiff's counsel objected:

> Q. Can you tell us when your attorney recommended getting a guarantee?
> MR. FERNANDEZ
> Objection.
> Don't answer that.

(Bryant Depo. Tr. 128:2-6).

Defense counsel did not follow up on his questioning regarding the alleged consultation between Mr. Bryant and an attorney regarding the guarantee. The Defendant seeks to compel an answer to this subsequent question on the theory that Mr. Bryant waived the attorney-client privilege by his previous response of "Attorney." Rather than waive any attorney-client privilege, when taken in context and in light of the immediate objection to any other questioning on this topic, the Court concludes that Mr. Bryant sufficiently invoked the attorney-client privilege with respect to any legal advice concerning the guarantee. This question does not simply seek the date of an attorney-client consultation, but also seeks to reveal information to which Mr. Bryant had already asserted the attorney-client privilege.

Under these circumstances, the court will not compel Mr. Bryant to provide an answer to the deposition question. The court is satisfied that a privileged attorney-client communication occurred in which Mr. Bryant, his attorney, or some other agent subject to the privilege discussed whether a guarantee should be obtained.[4] The question that Defendant seeks to have answered presupposes that Mr. Bryant's attorney recommended obtaining a guarantee, and whether or not that is true is the very information subject to the attorney-client privilege. Defendant asserts that the timing of the decision to request a guarantee is critical to its defense. Even if that is the case, discovery regarding the timing of that decision and how it was communicated to the defendant can be conducted without prying into the communications between attorneys and their clients.

**B.     Expenses**

Under Rule 37(a)(5)(B), if a motion to compel discovery is denied, the court must "require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney fees [unless] the motion was substantially justified or other circumstances make an award of expenses unjust." Because the court finds that the motion was substantially justified, the court will not award expenses to be paid to SFM for defending the motion.

**III.    CONCLUSION**

**IT IS ORDERED** that Defendant's Motion to Compel (R. Doc. 49) is **DENIED.**

Signed in Baton Rouge, Louisiana, on July 29, 2014.

                                                       **RICHARD L. BOURGEOIS, JR.**
                                                       **UNITED STATES MAGISTRATE JUDGE**

---

[4] Importantly, Defendant asserts that Mr. Bryant's answer waived the attorney-client privilege by revealing that his attorney recommended getting a guarantee. Accordingly, if the Plaintiff's answer instead invoked the attorney-client privilege, as the court concludes, then the identity of the person recommending getting a guarantee was not revealed and waiver could not even arguably occur. By arguing that the attorney-client privilege was waived, Defendant concedes that the underlying information is subject to the attorney-client privilege.