UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **SOUTHERN FILTER MEDIA, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO. 13-116-JJB-RLB** |
| **TIMOTHY P. HALTER** | |

## RULING AND ORDER

Before the court is Plaintiff Southern Filter Media, L.L.C.'s (SFM) Second Motion for Protective Order Quashing or Limiting the Discovery Sought by Timothy P. Halter (R. Doc. 55) and Defendant Timothy P. Halter's (Halter) Second Motion to Compel (R. Doc. 56). The motions are opposed. (R. Docs. 66, 67). Because the motions concern the same discovery requests, the court will consider them together. For the reasons given below, both motions are **GRANTED IN PART AND DENIED IN PART**.

## I. BACKGROUND

In this action, SFM alleges fraud, misrepresentation and conspiracy involving the negotiation and execution of a Master Service Agreement (MSA) between SFM and Titan Sand USA, L.L.C. (Titan) and a Performance Guaranty signed by Timothy P. Halter wherein Halter Financial Group, L.P. guaranteed Titan's performance under the MSA. (R. Doc. 73).[1] SFM alleges that under the MSA, "SFM agreed to sell and provide and Titan agreed to purchase and take not less than 6,000 tons of sand products per month (the 'Committed Volume') for a period of eighteen (18) months." (R. Doc. 73 at ¶ 21). Based on these obligations, SFM alleges that the

---

[1] The Performance Guaranty was signed by Halter on September 27, 2011. (R. Doc. 8-1 at 3). The MSA was entered into on September 29, 2011. (R. Doc. 1 at ¶ 13).

MSA was a "take or pay" contract requiring Titan to "pay SFM's invoices for the Committed Volume notwithstanding the actual volume of products of which Titan has taken delivery during each month of the Term of the MSA." (R. Doc. 73 at ¶ 22). SFM claims that Titan defaulted almost immediately and only took $258,954.70 of products for March 2012. (R. Doc. 73 at ¶ 24).

Titan then declared bankruptcy. SFM made a demand upon Halter Financial Group, L.P., per the terms of the Performance Guaranty. SFM alleges that upon this demand, Halter informed SFM that Halter Financial Group, L.P. was a subsidiary of the Halter Financial Group and had limited assets. Approximately five months later, Halter Financial Group, L.P. declared bankruptcy. SFM alleges that it is owed millions of dollars under the terms of the MSA and Performance Guaranty and seeks to recover these amounts from the defendants.[2]

SFM alleges that certain representations were made by Halter and other individuals affiliated with Halter Financial Group, L.P. in order to induce SFM to enter into the MSA with Titan. SFM was told that "Halter Financial Group and Halter had the wealth to easily pay the entire MSA if necessary" and that Matthew Bryant of SFM "was directed to the Halter Financial Group's website to assure himself that 'Halter Financial Group' was an established, capitalized entity with the resources to respond should Titan be unable to perform and that SFM could rely upon the financial strength of 'Halter Financial Group' to ensure that Titan performed under the long-term contract." (R. Doc. 73 at ¶ 12). SFM alleges that "Halter actively and knowingly defrauded SFM by having Halter Financial Group, LP, a financial shell, sign the Performance Guaranty notwithstanding that SFM had requested a guarantee from the 'parent company, Halter financial,' and Tim Halter's knowledge that SFM was relying upon the financial strength of the

---

[2] In its original Complaint, SFM only named Halter as the sole defendant. (*See* R. Doc. 1). SFM has since filed an Amended Complaint naming additional entities as defendants under the theory that they form a single business enterprise. (*See* R. Doc. 73).

'Halter Financial Group' to guarantee the MSA." (R. Doc. 73 at ¶ 46). SFM further alleges that Halter "personally conspired with Titan through the unknowing participation of its principals . . . and Halter Financial Group, L.P. to defraud SFM, knowing that Halter Financial Group, L.P. did not have the ability to perform under the Performance Guaranty as represented." (R. Doc. 73 at ¶ 48).

SFM seeks to recover from the defendants the sum of $8,921,045.30, less credit for partial deliveries. (R. Doc. 73 at ¶ 60). SFM claims that it is entitled to this amount under the MSA because "Titan was required to pay a minimum amount regardless of whether Titan took sand from SFM under the MSA," and, therefore, "the measure of damages is the 'take' amount, subtracting out the cost associated with getting the sand to the port for delivery (that amount is $85.00 a ton)." (R. Doc. 73 at ¶ 59).

Halter now seeks to compel various responses to interrogatories and requests for production seeking facts to support its own damages theory. Halter argues that SFM's damages, if any, are to be measured by its lost profits and mitigation efforts. (R. Doc. 56-1 at 10; R. Doc. 74 at ¶ 75).

Many of the documents sought by Halter are in the possession, custody, or control of Sun Minerals, L.L.C. ("Sun Minerals") and Kinder Sand Company, L.L.C. ("Kinder Sand"), which are owned by the same four family members (Matthew Bryant, David Bryant, Ronnie Bryant, and Debra Norman) who are the sole members and owners of SFM. (R. Doc. 56-1 at 2). Halter claims that SFM also has "control" of those documents within the meaning of Rule 34 of the Federal Rules of Civil Procedure, and can therefore be compelled to produce the documents.

In support of his Motion to Compel, Halter sets forth the discovery requests at issue, the responses by SFM, and Halter's assertions of the insufficiency as to each response provided.

3

The Motion to Compel is directed to Requests for Production numbers 24-26, 33-69, 72-73, 75-76, and Interrogatories numbers 2, 3, 5, 6, and 7. Halter further requests leave to supplement his damages expert's report based on any additional documents or information provided by SFM that is relevant to its calculation of damages. (R. Doc. 56-1 at 3).

SFM seeks a protective order quashing or limiting virtually the same discovery that Halter seeks to compel. SFM argues that documents sought to support Halter's damages theory based on lost profits and mitigation are irrelevant to determining damages because the MSA is a take-or-pay contract. SFM further argues that it does not have possession, custody, or control of documents in the possession of Sun Minerals and Kinder Sand, which SFM represents are non-party entities distinct from SFM. Finally, SFM represents that it has produced all non-privileged documents responsive to certain document requests or has provided supplemental responses to interrogatories.

## II. LAW AND ANALYSIS

Rule 26(b)(1) of the Federal Rules of Civil Procedure allows a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." A relevant discovery request seeks information that is "either admissible or reasonably calculated to lead to the discovery of admissible evidence." *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1484 (5th Cir. 1990) (quoting Fed. R. Civ. P. 26(b)(1)). Nonetheless, a party may withhold otherwise discoverable information on the basis of privilege. Fed. R. Civ. P. 26(b)(1). In addition, the "district court must limit otherwise permissible discovery if it determines that 'the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of discovery in resolving the issues." *Crosby v. La.*

*Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011) (quoting Fed. R. Civ. P. 26(2)(C)(iii)).

Rule 33 of the Federal Rules of Civil Procedure provides for the service of written interrogatories. A party seeking discovery under Rule 33 may serve interrogatories on any other party and the interrogatory "may relate to any matter that may be inquired into under Rule 26(b)." Fed. R. Civ. P. 33(a)(2). Rule 34 of the Federal Rules of Civil Procedure provides for the discovery of documents and tangible items. A party seeking discovery must serve a request for production on the party believed to be in possession, custody, or control of the documents or other evidence. Fed. R. Civ. P. 34(a). The request is to be in writing and must set forth, among other things, the desired items with "reasonable particularity." Fed. R. Civ. P. 34(b)(1)(A).

If a party fails to answer interrogatories or permit inspection as required under Rules 33 and 34, the party seeking discovery may move to compel disclosure and for appropriate sanctions under Rule 37. An "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4).

### A. Relevance of SFM's Lost Profits and Mitigation Efforts

The general scope of discovery is broad and permits the discovery of "any nonprivileged matter that is relevant to any party's claim or defense." *Crosby*, 647 F.3d at 262 (5th Cir. 2011) (quoting Fed. R. Civ. P. 26(b)(1)). The rules governing discovery are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. *Hebert v. Lando,* 441 U.S. 153, 176 (1979). It is well established that the scope of discovery is within the sound discretion of the trial court. *E.g.*, *Quintero v. Klaveness Ship Lines,* 914 F.2d 717, 724 (5th Cir. 1990) ("the district court has wide discretion in determining the scope and effect of discovery").

Halter claims that many of the documents requests and interrogatories at issue are relevant to his theory of damages, which is based on the measure of SFM's lost profits and reasonable mitigation efforts. SFM claims that a substantial amount of the documents and information sought by Halter to supports his damages theory are irrelevant because the MSA is a "take-or-pay" contract.

The parties both acknowledge that courts applying Louisiana law have held that take-or-pay contacts are enforceable, and provide for alternative performances. *See*, *e.g*, *PGC Pipeline v. La. Intrastate Gas*, 791 F.2d 338, 340 (5th Cir. 1986); *Pogo Producing Co. v. Sea Robin Pipeline Co.*, 493 So. 2d 909, 915-16 (La. Ct. App. 3d Cir. 1986); *see also* La. Civ. Code Ann. art. 1808 ("An obligation is alternative when an obligor is bound to render only one of two or more items of performance."). The parties disagree, however, on whether the MSA constitutes a take-or-pay contract in the first place. According to SFM, the MSA is a take-or-pay contract based upon its very terms and self-description as a take-or-pay contract. In contrast, Halter argues that the MSA does not constitute a true "take-or-pay" contract because it did not provide Titan the "right to make-up paid-for goods by taking an excess amount at a later date." (R. Doc. 66 at 11 (citing *Frey v. Amoco Prod. Co.*, 603 So. 2d 166, 175 (La. 1992)). Halter argues that the "pay" option in the MSA is not an alternate choice to the "take" option, but is instead "an unreasonable and unenforceable stipulated-damages or penalty clause." (R. Doc. 66 at 11).

Assuming the MSA is a take-or-pay contract, the parties further disagree on how breach damages to a take-or-pay contract are measured. SFM argues that it is entitled to breach damages measured by the "pay amount" in the MSA, which is the minimum volume of sand multiplied by the price less freight expenses. SFM claims that the specific pay amount at issue is $510,000.00 per month for a total potential liability of $8,921,045.30, plus additional damages.

(R. Doc. 55-1 at 9). In contrast, Halter claims that the correct measure of damages is SFM's lost profits and reasonable mitigation efforts.[3] Halter argues that the "pay amount" in an enforceable take-or-pay contract is simply a measure of an alternative performance, not a stipulated remedy for breach. (R. Doc. 66 at 13).[4]

The court need not decide these issues in the context of this discovery dispute, as they are properly decided on a dispositive motion for partial summary judgment. Halter's arguments are colorable, and discovery is broad. The court finds, therefore, that information regarding SFM's lost profits and mitigation efforts are relevant to a claim or defense of a party. *See* Fed. R. Civ. P. 26.

Accordingly, SFM's Motion for Protective Order is **DENIED** and Halter's Motion to Compel is **GRANTED** to the extent SFM argues that it need not respond to Halter's discovery requests on the basis that the responses call for documents and information relevant to lost profits and mitigation efforts.[5]

### B. SFM's Objections that Halter's Discovery Requests are Overly Broad, Vague, Ambiguous, and Unduly Burdensome

In support of his Motion to Compel, Halter addresses SFM's additional objections to Halter's discovery requests on the bases that they are overly broad, vague, ambiguous, and unduly burdensome. Specifically, SFM objected to the discovery requests on the basis that "the

---

[3] *See* La. Civ. Code art. 1995 ("Damages [for failure to perform a conventional obligation] are measured by the loss sustained by the obligee and the profit of which he has been deprived); La. Civ. Code art. 2002 ("An obligee must make reasonable efforts to mitigate the damage caused by the obligor's failure to perform [a conventional obligation]. When an obligee fails to make these efforts, the obligor may demand that the damages be accordingly reduced.").
[4] *See Universal Res. Corp. v. Panhandle E. Pipe Line Co.*, 813 F.2d 77, 80 n. 4 (5th Cir. 1987) ("The take-or-pay clause is a promise in the Agreement, *not a measure of damages after breach*.") (emphasis added by Halter)).
[5] As discussed below, this ruling does not concern document requests or interrogatories issued by Halter requesting SFM to produce documents or information concerning documents in the control of non-party entities.

7

time period specified in the definitions is unreasonable and unduly burdensome" and, for some of the requests, it "cannot tell what class of documents are being sought." (*See*, *e.g.*, R. Doc. 55-3 at 20). Halter requested responses to discovery covering the period of January 1, 2008 until the date of the requests on June 12, 2014. (R. Doc. 55-2 at 2, 8).

In support of its Motion for Protective Order, SFM does not raise any arguments in support of its discovey objections regarding the overbreadth, vagueness, or ambiguity of the discovery requests. SFM broadly claims that the "burden and expense" of answering Halter's discovery requests "outweighs the benefit" of production in the context of arguing Halter's discovery requests are irrelevant. (*See* R. Doc. 55-1 at 4, 11). SFM also claims that the discovery requests are "unduly burdensome" because they concern documents in the possession, custody, and control of non-parties. (R. Doc. 55-1 at 11). SFM does not raise any particular argument specifying why producing documents and information for the time periods identified by Halter would result in undue burden to SFM.[6]

SFM's opposition to Halter's Motion to Compel provides no further insight into SFM's vague and conclusory objections, as it merely adopts by reference SFM's arguments in support of its Motion for Protective Order.[7]

Based on the foregoing, the court finds SFM's conclusory objections on the grounds of that Halter's discovey requests are overly broad, vague, ambiguous, and unduly burdensome are entirely inadequate and do not overcome SFM's burden in objecting to the referenced discovery.

---

[6] SFM requests "a protective order declaring its responses of tax returns and financials for the years 2011-2013, inclusive, are sufficient responses" to Requests for Production Nos. 55 and 56. (R. Doc. 55-1 at 14). SFM does not provide any argument for why a production of all of the documents responsive those document requests for the time frame identified by Halter would result in undue burden. The court, therefore, orders SFM to provide complete responses of non-privileged documents for the time periods identified by Halter in his discovery request.

[7] In support of its Motion for Protective Order, SFM states that it does not intend to waive its general and specific objections to discovery not directly addressed in its briefing. (R. Doc. 55-1 at 4).

*See McLeod, Alexander, Powell & Apfell, P.C. v. Quarks*, 894 F.2d 1482, 1485 (5th Cir. 1990) (placing the burden on the party opposing discovery to "show specifically how ... each [request] is not relevant or how each [request] is overly broad, burdensome or oppressive"); *S.E.C. v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006) ("Broad-based, non-specific objections ... fall woefully short of the burden that must be borne by a party making an objection to an interrogatory or document request.").

The court, therefore, will require SFM to produce responsive documents and answer interrogatories even where SFM has objected to those discovery requests on the basis that the requests are overly broad, vague, ambiguous, and unduly burdensome. Unless otherwise included in the scope of the court's protective order granted herein, SFM must produce non-privileged, responsive documents to Halter's discovery requests and answer all interrogatories for the scope and time frame identified by Halter.

    **C.**    **Documents in the Possession, Custody, and Control of Non-Parties**

Rule 34 requires that a responding party produce responsive documents that are within their "possession, custody or control." Documents are deemed to be within the "possession, custody or control" of a responding party if that party either has "actual possession, custody or control" of the documents or if that party "has the legal right to obtain the documents on demand or has the practical ability to obtain the documents from a non-party to the action." *Estate of Monroe v. Bottle Rock Power Corp.*, No. 03-2682, 2004 WL 737463, at *10 (E.D. La. April 2, 2004). "Rule 34 is broadly construed and documents within a party's control are subject to discovery, even if owned by a nonparty." *Id*. (citing *Commerce and Industry Ins. Co. v. Grinnell Corp.*, Nos. 97-0775, 97-0803, 98-2200, 2001 WL 96337, at *3 (E. D. La. Feb. 1. 2001)). The burden, however, is on the party seeking discovery to make a showing that the other party has

9

control over the documents sought. *Id*. Typically, what must be shown to establish control over documents in the possession of a non-party is that there is "a relationship, either because of some affiliation, employment or statute, such that a party is able to command release of certain documents by the non-party person or entity in actual possession." *Id*.; *see also Shell Global Solutions (US) Inc. v. RMS Engineering, Inc.*, No. 09-cv-3778, 2011 WL 3418396 (S.D. Tex. Aug. 3, 2011) ("Among the factors used by courts to determine whether one corporation may be deemed under control of another corporation are: (a) commonality of ownership, (b) exchange or intermingling of directors, officers or employees of the two corporations, (c) exchange of documents between the corporations in the ordinary course of business, (d) any benefit or involvement of the nonparty corporation in the transaction, and (e) involvement of the non-party corporation in the litigation."). Courts have ordered corporate parties to produce documents in the possession of corporate relatives—such as parent, sibling, or subsidiary corporations. *See Steel Software Sys. Corp. v. DataQuick Info. Sys., Inc.*, 237 F.R.D. 561, 564 (D. Md. 2006).

SFM seeks a protective order stating that it does not need to respond to certain discovery requests on the basis that SFM does not have possession, custody, or control over documents in the possession of Sun Minerals and Kinder Sand.[8] SFM notes that although these non-party entities each sold some of the same type of sand products specified in the MSA to Titan, those sales occurred before the MSA was in effect.

In contrast, Halter argues that SFM has control of documents in the possession of Sun Minerals and Kinder Sand because those entities are owned by the same four family members (Matthew Bryant, David Bryant, Ronnie Bryant, and Debra Norman) who are the sole members

---

[8] SFM has represented that the requested Sun Minerals and Kinder Sand documents are not in its "possession" or "custody." Accordingly, the sole issue is whether SFM has "control" over those documents.

and owners of SFM. Halter claims that there is overlapping management of the three business entities. In addition, Halter suggests that because SFM has entered into a confidentiality agreement on behalf of Sun Minerals and Kinder Sand, it can exercise control over documents in those non-party entities' possession. Halter also claims that all three business entities "were involved in the underlying transaction" and "are all engaged in the industrial sand business, and they sell some common products." (R. Doc. 56-1 at 7).

Based on the information submitted by the parties, the court concludes that Halter has not met his burden of demonstrating that SFM has control over documents in the sole possession of Sun Minerals and Kinder Sand. Halter has not established, much less argued, that SFM is a sibling entity of Sun Minerals or Kinder Sand. Halter has not shown that SFM has any ownership interest in Sun Minerals or Kinder Sand. Halter has not shown that SFM shares a parent corporation with Sun Minerals or Kinder Sand. Halter has not shown that SFM is either the parent of, or subsidiary of, either Sun Minerals or Kinder Sand. Halter has not shown that SFM, Sun Minerals, and Kinder Sand exchange documents in the course of business.

Halter has represented that the same four family members are the sole members and owners of SFM, Sun Minerals, and Kinder Sand, and there appears to be an intermingling of management. SFM is the party plaintiff in this action, however, not its members or owners. Halter has not established that Sun Minerals or Kinder derive any benefits from the SFM or are otherwise involved in the SFM.

Halter also suggests that the three business entities were involved in the MSA because they are all engaged in the industrial sand business and Titan purchased sand products from each of the three companies from August 2011 to March 2012. Halter has provided some outstanding invoices issued by Sun Minerals to Titan. (R. Doc. 56-8). These invoices merely establish that

Sun Minerals had a business relationship to Titan, as they all predate the effective date of the MSA, which was February 1, 2012 . (R. Doc. 73 at ¶ 17). Without more, Halter has not met its burden of establishing that SFM has control over documents solely in the possession of Sun Minerals and Kinder Sand.[9]

Accordingly, SFM's Motion for Protective Order is **GRANTED** to the extent SFM seeks a protective order providing that it need not produce documents in response to Halter's documents requests on the basis that SFM does not have control over documents in the possession, custody, and control of Sun Minerals and Kinder Sand. In light of this decision, the Court will not require SFM to produce documents that SFM represents that it does not have possession, custody, and control over and that are in the sole possession, custody, and control of Sun Minerals and Kinder Sand, non-parties to this action.[10]

Based on the foregoing, SFM is not required to respond to Requests for Production Nos. 25, 26, 37, 38, 39, 40, 41, 42, 46, 47, 48, 49, 50, 51, 58, 59, 60, 61, 63, 64, 66, 67, 72, 73, 75, and 76, and Request for Documents Nos. 55 and 69 to the extent they seek documents solely under the custody, possession, and control of Kinder Sand or Sun Minerals.[11] Conversely, Halter's Motion to Compel responses to the foregoing requests for production is **DENIED**.

---

[9] Halter relies in part on a decision requiring the plaintiff corporation to produce documents in the possession of a non-party foreign corporation where a single individual owned 100% of the plaintiff and 95% of the foreign corporation, and the court found that both corporations were "alter egos" of the individual. *See Perioni Am., Inc. v. Paper Converting Mach Co.*, 559 F. Supp. 552, 552-53 (E.D. Wis. 1983). Here, SFM, Sun Miners, and Kinder sands are not "alter egos" of a single individual, nor has Halter shown that they are "alter egos" of their four members and owners.

[10] The court will not issue a protective order regarding Request for Production No. 62 on this basis, as that request for production makes no mention of either Kinder Sand or Sun Minerals, and appears directed to documents in SFM's possession, custody, or control.

[11] Because the court finds that documents in the sole possession of Kinder Sand or Sun Minerals are not in the possession, custody, or control of SFM, the court does not reach the parties' other arguments regarding whether the requests for production are irrelevant, overly broad, vague, ambiguous, and unduly burdensome. The court also takes no position as to whether these documents pertaining to the non-parties would be within the scope of permissible discovery even under a "lost profits" measure of damages.

SFM also seeks a protective order regarding Interrogatories Nos. 3, 6, and 7 on the basis that they seek or concern documents in the sole possession, custody, or control of Sun Minerals or Kinder Sand. Halter's interrogatories do not seek the production of documents; instead, they seek information that may be found in documents. To the extent SFM does not have access to information that is requested in one of these interrogatories, it may simply inform Halter of that fact. Halter may, however, have information requested in one of the interrogatories in light of its dealings with Kinder Sand and Sun Minerals. If SFM purchased sand from Kinder Sand and Sun Minerals, then information in its possession concerning those dealings could be relevant to the measure of SFM's lost profits. As stated in footnote 11, the court takes no position as to whether information within documents in the sole possession, custody, and control of either Kinder Sand or Sun Minerals is relevant to SFM's lost profits.

Accordingly, SFM's Motion for Protective Order is **DENIED** to the extent SFM seeks a protective order providing that it need not answer Interrogatories Nos. 3, 6, and 7 on the basis that they seek information contained in documents not under SFM's possession, custody, or control.

D.      **Completed Productions of Documents by SFM**

SFM represents that it has produced all responsive, non-privileged documents in its possession, custody, or control in response to Requests for Production 36, 43, 44, 45, 52, and 70. These requests for production do not concern documents in the sole possession, custody, or control of Kinder Sand or Sun Minerals.

Accordingly, SFM's Motion for Protective Order is **GRANTED** to the extent SFM seeks a protective order stating that it need not respond any further to Requests for Production 36, 43,

44, 45, 52, and 70. Halter's Motion to Compel is **DENIED** with respect to Requests for Production Nos. 36, 43, 44, 45, and 52.[12]

E. **Documents Regarding SFM's Facility Expansion**

Requests for Production Nos. 53 and 54 seek documents regarding SFM's facility expansion. Request for Production No. 53 requests production of "any and all checks, cashed checks, receipts, money orders, wire transfer receipts, and any other documents reflecting or evidencing amounts paid to contract workers hired by you for the expansion of your facility." (R. Doc. 56-1 at 13). Request for Production No. 54 requests production of "any and all documents evidencing, reflecting, or describing any costs incurred by you in accelerating or expediting the expansion of your facility." (*Id*.).

SFM represents that it has produced a documents identifying that $464,461.90 was "spent to hasten the expansion of its facility to service the MSA." (R. Doc. 55-1 at 13). Based on that representation, SFM seeks a protective order stating that it does not need to produce any additional documents responsive to these requests. SFM does not represent, however, that it has produced all non-privileged documents responsive to these discovery requests that are in its possession, custody, or control.[13]

Accordingly, SFM's Motion for Protective Order is **DENIED**, and Halter's Motion to Compel is **GRANTED**, with respect to Requests for Production Nos. 53 and 54. SFM shall provide any additional documents in its possession, custody, or control responsive to these discovery requests no later than thirty days from the date of this Order. If all such documents

---

[12] Halter has not moved to compel a response to Request for Production No. 70.
[13] SFM did not object to these discovery requests on the basis that they are irrelevant. SFM objected to each of these discovery requests "on the basis that the request is overly broad, vague, ambiguous, and unduly burdensome." (R. Doc. 55-3 at 25). For the reasons discussed above, SFM has not satisfied its burden of proof in demonstrating that it need not respond to these discovery requests based on these objections.

have already been produced, then SFM may inform Halter that its production with regard to these document requests is complete.

F.     **Sufficiency of SFM's Supplemental Responses to Interrogatories**

SFM represents that it has provided supplemental responses to Interrogatories 1, 2 and 3 and requests the court to issue a protective order declaring those responses to be sufficient. (R. Doc. 55-1). Halter is seeking to compel more complete answers to Interrogatories 2 and 3.

Interrogatory No. 2 asks SFM the following: "If you contend that Halter misled SFM as to the identity of the entity that executed the Performance Guaranty, please provide the factual basis for your contention." (R. Doc. 55-3 at 6). SFM's first response to this interrogatory directed Halter to the pleadings and its other discovery responses. SFM then supplemented its response, providing a narrative discussing its allegations in the complaint. (R. Doc. 55-1 at 6-10). The court finds this supplemental response to be sufficient. Accordingly, SFM's specific factual allegations may be relied upon to support SFM's contention that Halter misled SFM as to the identity of the entity that executed the Performance Guaranty. Both sides have had an opportunity to conduct discovery regarding (1) whether the factual allegations in the Petition regarding Halter's representations actually occurred and, (2) even if they did, whether SFM relied on those representations and whether reliance on those representations support the merits of SFM's claims.

Interrogatory No. 3 asks SFM the following: "Please identify SFM's, Kinder Sand's and Sun Mineral's suppliers of raw sand. In your answer, please include the amount of raw sand purchased from each supplier on a monthly, quarterly, and annual basis." Subject to its objections regarding relevance, overbreadth, vagueness, ambiguity, and possession, custody, or control, SFM stated that it "is unable to determine an accurate tonnage calculation of sand

purchased." (R. Doc. 55-3 at 10). SFM also referred Halter to its production regarding purchased sand. (*Id.*) In its supplemental response, SFM directs Halter to three particular pages in its productions. (*Id.*)

A party responding to an interrogatory has the option to produce business records. *See* Fed. R. Civ. P. 33(d). The responding party must specify "the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." Fed. R. Civ. P. 33(d)(1).

According to Halter, SFM's "production regarding the purchased sand," and presumably the documents specifically identified by SFM in its supplemental response, "do not identify either SFM's suppliers of raw sand or the volume of sand purchased" as requested in the interrogatory. (R. Doc. 56-1 at 20). As discussed above, the court finds that information regarding SFM's lost profits is relevant, SFM's objections regarding overbreadth, vagueness, ambiguity are unsupported, and SFM's objection that it has no "possession, custody, or control" of documents is of no event with regard to an interrogatory. The court will, therefore, require SFM to supplement its response to Fed. R. Civ. P. 33(d), identifying the suppliers of raw sand and volumes produced.

### G. Halter's Request For Leave to Supplement Expert Report on Damages

Through the instant motion, Halter requests the court to grant him leave to supplement his expert report on damages after a review of the documents compelled by this Order. (R. Doc. 56 at 2). On August 25, 2014, Halter filed an Agreed Motion to Vacate Scheduling Order, which again raises Halter's desire to supplement his expert's report. (R. Doc. 86).

In a separate order, the court will grant the Agreed Motion to Vacate Scheduling Order. The court will then determine, after holding a scheduling conference with the parties, which pre-

trial deadlines should be extended. Accordingly, Halter's request for leave to supplement his expert's report on damages is **DENIED** as premature.[14] The issues raised by Halter can be addressed in the context of setting new pre-trial deadlines.

### H. Expenses

Under Rule 37(a)(5)(C), if a motion to compel discovery is granted in part and denied in part, a court may apportion the reasonable expenses for the motion. Because the Motion to Compel has been granted in part and denied in part, the Court has determined that the parties shall each bear their own costs in connection with this Motion.

## III. CONCLUSION

For the reasons set forth above,

**IT IS ORDERED** that SFM's Motion for Protective Order (R. Doc. 55) is **GRANTED IN PART AND DENIED IN PART.** SFM need not respond to requests for documents seeking documents in the control of non-parties or for which SFM has represented it has made a complete production of all non-privileged, responsive documents. Accordingly, SFM need not produce any responses (or supplemental responses) to Requests for Production Nos. 25, 26, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 58, 59, 60, 61, 63, 64, 66, 67, 70, 72, 73, 75, and 76, and Request for Documents Nos. 55 and 69 to the extent they seek documents solely under the custody, possession, and control of Kinder Sand or Sun Minerals. SFM need not produce any additional supplemental response to Interrogatory No. 2.

**IT IS FURTHER ORDERED** that Halter's Second Motion to Compel Discovery Responses (R. Doc. 56) is **GRANTED IN PART AND DENIED IN PART**. SFM must produce complete responses (or supplemental responses) to Requests for Productions Nos. 24,

---

[14] In light of the supplemental productions required by this order relevant to SFM's lost profits and mitigation efforts, the court finds that there is good cause for allowing Halter to supplement his expert's report on damages.

33, 34, 35, 53, 54, 55, 56, 57, 62, 65, 68, 69, except to the extent Requests for Production Nos. 55 and 69 seek documents solely under the custody, possession, and control of Kinder Sand or Sun Minerals. SFM shall also provide complete supplemental responses to Interrogatory Nos. 3, 5, 6, and 7.

**IT IS FURTHER ORDERED** that SFM shall supplement its discovery responses as set forth above no later than 30 days after the date of this Order.

**IT IS FURTHER ORDERED** that each party shall bear its own costs.

Signed in Baton Rouge, Louisiana, on August 29, 2014.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**